1815.

Wendell
v.
Van Rensse-
laer.

Sept. 6, 1814,
and
Jan. 16, 1815.

*Executors and heirs of* Wendell *against* Killian Van
Rensselaer.

A deed by a client to his attorney and scrivener, for the consideration of af-
fection and friendship, and also for a sum of money, though not one third
the value of the land conveyed, will not be set aside on the ground of igno-
rance and blind confidence on the one side, and undue influence on the other,
there being no evidence of imbecility or incapacity in the grantor, nor
of fraud or imposition by the grantee; nor of that relationship between the
parties, which might imply the existence of an undue influence.

Where a person having a conveyance of land, keeps it secret for several
years, and knowingly suffers third persons, afterwards, to purchase parts of
the same premises from the grantor, who remained in possession, and was
the reputed owner, and to expend money on the land, without giving any
notice of his claim, he will not be permitted, afterwards, to assert his legal
title against such innocent and *bona fide* purchasers.

THE bill in this cause stated, that *Philip Wendell*, on
the 8th of *December*, 1808, died seised of real estate, &c.
in the city of *Albany*, part of which consisted of a lot of
ground in *Court-street* ; 10 acres of land, called *Wendell's
Pasture*, and lots No. 3. and No. 2., on the east side of *Bea-
ver-street*. By his last will, he authorized his executors to
receive the rents and profits of his real estate, to lease the
same, and, out of the rents and profits, to support his chil-
dren, &c. That the defendant pretends to have some claim
to the above-mentioned property. That the testator, with
the knowledge of the defendant, and after the existence of
his pretended claim, conveyed one of the lots on *Beaver-street*
to *C. R. & G. Webster*, with covenants and warranty, &c. ;
and they, with the knowledge of the defendant, made valua-
ble improvements thereon ; and that the defendant had
brought an action of ejectment for the lot in *Court-street*.
The bill prayed for a *discovery* of the defendant's title and
claim to the premises, &c., and that the title of the plain-

tiffs may be *quieted* in all the estate of which the testator died seised, &c. and for an *injunction*, &c.

The defendant, in his answer, admitted that the testator died possessed of considerable real estate, &c. and made his will, &c. as stated in the bill: that the testator, long before his death, was in the actual and notorious possession of the lot in *Court-street*, and the lots in *Beaver-street*, and of some parts of the *pasture:* that the part of the pasture cleared by the defendant is vacant, except some ice houses thereon. That the testator, in 1807, or 1808, conveyed the whole or a part of the pasture to *Stewart Lewis*, but without the knowledge of the defendant, as he was ignorant thereof until after the testator's death; and he denied that the testator had any but a life estate in the premises. That the testator, on the 9th of *July*, 1792, contracted and *agreed,* with the defendant, " for the natural love and affection towards his friend," the defendant, " and for the further consideration thereinafter mentioned," to convey to the defendant, his heirs and assigns, for ever, *in fee*, the one half of the *pasture*, &c.; lots No. 2. and 3., in *Nail-alley*, subject to a lease to *Elisha Crane*, and the lot in *Court-street*, &c.; *Provided*, the defendant, or his heirs or assigns, pay to the testator, or his heirs, 940*l.*, within two years; and it was agreed by the parties, that if the testator conveyed the premises to the defendant, the testator was to have the use and income thereof during his natural life. This contract was proved by the subscribing witness, before a master, the 28th of *March*, 1809. The defendant also endorsed on the instrument, that on the 17th of *March*, 1794, the testator had executed a release to him of the lot in *Court-street;* and that on the 6th of *August*, 1794, the testator had executed a deed to him, for the residue of the property mentioned in the contract. The defendant stated, that *W. Yates*, the subscribing witness, was a clerk in his office; and he set forth the deed of the 17th of *March*, 1794, at large, which contained the following recital: " Whereas

I have made an agreement with my friend, *K. K. Van Rensselaer*, respecting a lot of ground situate in *Court-street*, &c., in consideration of 1,500 dollars, paid to me; and whereas I am to be permitted to take, during my life, the rents of the said lot, in case I should build a house or houses on the same, and to let it as I think proper; and whereas I am to receive at the rate of twenty pounds a year, during my life, from the said *Killian*, his heirs or assigns; and having no children, and possessing a large estate, sufficient to provide for my brothers' and sisters' children, with a desire to comply with the request of my friend and relation, I am inclined to convey as follows." The remainder of the deed was in the ordinary form, for the consideration of 1,500 dollars, with covenants against encumbrances and warranty. This deed, in the handwriting of the defendant, was executed in his office, in presence of a clerk, and two witnesses residing in *Washington* county, then present, but since dead. That the defendant gave the testator a note for the 1,500 dollars, payable in six months, which he afterwards paid. That, before giving this note, he had lent the testator money, for which he held his notes, and when the defendant's account was settled, the testator's notes were set off against it, and the balance paid in cash, and a receipt in full was endorsed on the note of the defendant. That, in further performance of his contract, the testator gave the defendant another deed, dated *August* 6th, 1794, for lots No. 2. and No. 3., in *Beaver-street*, and the *pasture*, or hay land, which are described by metes and bounds; but the quantity of acres was not mentioned. This deed, which was set out at length, was absolute in its terms, with a covenant of warranty, and purported to be for the consideration of 340*l.*: it was in the handwriting of the defendant, and executed in his office, in presence of his clerk, and a neighbour, and was proved by the clerk, before a master, the 21st of *April*, 1809. That the defendant gave a note to the testator for the 340*l.*, payable

in two months, which he paid when it became due, and took the receipt of the testator endorsed thereon.

That in the winter of 1794, a difficulty arose between the parties respecting the bounds of the land in *Wendell's Pasture*, and the two lots in *Nail-alley*, (*Beaver-street*,) as there was no survey or map of the premises ; and on the 17th of *March*, 1794, the testator proposed to convey the lot in *Court-street* immediately, and extend the time of payment, under the contract, for 6 months ; and to have the pasture surveyed, and give a deed for it, if the defendant would pay him interest on the 940*l.* for two years ; and the defendant agreed, instead of the interest on the 940*l.*, to give the testator an annuity of 20*l.* for life, and which was accordingly secured by the recital in the first deed. That the description of the property, in the deed of the 6th of *August*, 1794, was taken from that given by the testator. That the contract and conveyance were all obtained in good faith, and for a valuable consideration, actually paid, and after the testator (who was a bachelor) had offered to convey to the defendant his whole estate, for an annuity, which the defendant had declined. The defendant denied all fraud or imposition, or ill practices in obtaining the deeds. He admitted that the sale to *C. R. & G. Webster*, of the lot in *Beaver-street*, and the improvements thereon, were known to him ; but, from a conversation with *G. W.*, he supposed it was a different lot, or No. 1. That he paid the testator the annuity of 20*l.*, until *March*, 1799, and produced the receipts, which specified 20*l. for rent*. That he refused to pay it, afterwards, until the testator should have the pasture land, and the lot in *Nail-alley*, surveyed and laid out.

A great number of witnesses were examined on both sides, whose depositions, with the exhibits, were read at the hearing. Among the exhibits was a lease from the testator to *John Ogle*, dated the 1st of *May*, 1793, for 16 years, for lot No. 3., (one of the lots mentioned in the contract of the 9th of *July*, 1792, and in the deed of the 6th of *August*,

1815.

WENDELL

v.

VAN RENSSE-
LAER.

1794,) which was a printed blank, filled up in the hand-writing of the defendant, and its execution witnessed by the defendant and his clerk.   Also, a lease from the testator to *Ogle,* for 19 years, of lot No. 4., executed at the same time, and filled up and witnessed in the same manner.   There were several other leases for lots No. 7. and 9., filled up, and witnessed in the same manner, by the defendant. '

It was stated by several witnesses, that, after the deeds to the defendant, the testator leased and disposed of parts of the property, and that the writings were drawn by the defendant as his lawyer.   That at the date of the contract, and of the deeds, the defendant was the confidential friend of the testator, and transacted business for him, as his lawyer and conveyancer.   That the testator was ignorant of the forms of business, close in his dealings, and of a suspicious temper, except towards those in whom he confided, and in whom he placed implicit and unbounded confidence; and that the premises conveyed to the defendant were worth three times the amount of the consideration in the deeds. It appeared, also, that after the contract with the defendant, and conveyances to him, the testator made a contract for the sale of part of his grounds, called *Wendell's Pasture,* with one *Tallman,* part of which ground was comprised in the deed to the defendant ; and that he, afterwards, sold and conveyed the same property, or a part thereof, to *Stewart Lewis ;* that a dispute about the property arose between the testator, *Tallman,* and *Lewis,* which was public and well known to the defendant ; and the controversy was, afterwards, with the knowledge of the defendant, settled by referees ; so that *Tallman* became entitled to part of the land sold by the testator to *Lewis ;* and as an equivalent therefor, the testator conveyed part of the *pasture,* now claimed by the defendant, to *Lewis,* who has built upon the ground, and made improvements thereon, under the eyes of the defendant, who gave no notice of any claim, nor made any objection to what had been done.

*Harison* and *Riggs*, for the plaintiffs.

*Henry*, for the defendant.

The cause was brought on to a hearing, when *Henry*, for the defendant, objected, preliminarily, to proceeding in the cause for want of *proper parties*. The bill was filed for discovery of the defendant's claim to lands owned by the testator in his lifetime, and of which he had conveyed part by deed, with covenants of warranty, to *Charles R.* and *G. Webster*, and to *R. Gill* and *D. S. Lewis*, and had died seised of the remainder; and the bill prayed to be quieted in their right as representatives. The objection was, that the above purchasers were not parties, and that the rule was, that all persons having a right or interest concerned, or who may be affected by the decree, ought to be made parties, so that one decree may finally settle all the rights and interests involved in the controversy, and prevent further litigation.

*Sept. 6th, 1814.*

The general rule, requiring all persons interested to be made parties to the suit, is confined to parties to the interest involved in the issue, and who must, necessarily, be affected by the decree. It is a rule of convenience merely, and may be dispensed with, when it becomes extremely difficult or inconvenient.

*Riggs* and *Harison*, contra. These purchasers have no interest in some of the lands covered by the defendant's deeds, and claimed by the plaintiffs; and they have no interest in the estate whereof *Philip Wendell* died seised, and which alone is the subject of the bill.

THE CHANCELLOR. The only interest involved in this suit, is that belonging to the representatives of *Philip Wendell*, deceased. Persons who purchased of *Wendell*, in his lifetime, are not concerned in this suit. They may have an interest in the point or question litigated, viz. whether the deeds of the defendant, covering their lands as well as the lands of the plaintiffs, be valid; but that circumstance alone will not render them necessary parties. If all persons interested in lands covered by the defendant's deeds (and which deeds the plaintiffs controvert) were to be made parties, it would be very inconvenient. They may be numerous.

as the lands lie in a populous part of the city of *Albany*; and on that principle a suit involving a question on the validity of some of our largest patents would require all the inhabitants on them to be made parties. The general rule, requiring all persons interested to be parties, ought to be restricted to cases of parties to the interest involved in the issue, and necessarily to be affected by the decree. It is, besides, a rule adopted for convenience merely, and is dispensed with when it becomes extremely difficult or inconvenient. (*Adair* v. *The New River Company*, 11 *Ves.* 429.) The interest now in contest is that whereof *Wendell* is alleged to have *died seised;* and all persons concerned in that interest are plaintiffs, and that is sufficient. If relief is to be granted, it will, of course, be so modified as not to affect the interest of others. The objection is overruled.

The cause was then argued, on the merits, at great length; but the points and authorities are so fully discussed in the judgment pronounced by the court, that it is thought unnecessary to state the arguments of counsel.

*Jan.* 16, 1815.     The cause stood over for decision until this day, when the following opinion was delivered by the court.

<div style="margin-left:2em">A deed from a client to his attorney and counsel will not be set aside on the ground of any implied existence of undue influence, nor unless fraud or imposition be shown.</div>

THE CHANCELLOR. The deeds set up by the defendant were taken and kept under such circumstances as very naturally to have excited great distrust in the testator's heirs; and it must be confessed that they have been viewed with jealousy by the court. I cannot, however, perceive any sufficient ground, or select any solid principle, upon which I can set them absolutely aside, as unduly or fraudulently obtained. The parties, at the time, did not stand in such relation to each other, as necessarily to render the deeds invalid, on principles of utility or policy, flowing from such relation. The defendant occasionally did small business, as a scrivener, for the testator, but these deeds were not procured or given by way of remuneration or bounty, for antecedent kindness;

they were purchases made, or purporting and shown to have been made, for a valuable, if not a full consideration. There was no connexion, at the time, between the parties, that would justly imply the existence of undue influence, or the *fraus innexa clienti*; and the cases to which I have been referred, (2 *Ves.* 281. 2 *Schoale & Lefroy*, 492. 2 *Ves.* jun. 199. 9 *Ves.* jun. 292. 12 *Ves.* jun. 371. 13 *Ves.* jun. 136. 14 *Ves.* jun, 91. 273.,) of undue influence arising from particular relations between parties, do not seem to apply. Nor have I been able to discover any fraud or imposition practised upon the testator. The evidence will not warrant the conclusion that the testator was too ignorant, or too weak in understanding, to make valid contracts. All the proof in the case shows that he was in the constant habit of dealing, in regard to his property, with the public at large, with ordinary discretion and sagacity. Though the testator may have placed a very strong, and even blind confidence in the defendant, it does not appear that such confidence was excited by any undue arts, or by any relationship between the parties, which will authorize this court to interfere. The bargain seems to have been incautious and injudicious on the part of the testator, if we consider it as a mere pecuniary transaction between strangers dealing at arms length; but it is not to be helped for that cause. The case is not of that gross and extravagant kind, like those of *Hugunin* v. *Baseley*, and of *Purcell* v. *M‘Namara*, (14 *Ves.* 91. 273.,) in which the impression of folly and ignorance on one side, and of undue and overbearing influence on the other, was irresistible. It is, however, a case of so peculiar an aspect, that if I had been able to discover the least *scintilla* of fraud or imposition on the part of the defendant, in procuring the deeds, I should readily have interposed and annulled the transaction; but I see no such imposition; and as between the parties themselves, I conclude that the deeds must be permitted to stand.

1815.

WENDELL
v.
VAN RENSSE-
LAER.

The defendant was to pay the testator an annuity of 20*l.* for life, and this annuity has been suspended since *March*, 1799, by a refusal, on the part of the defendant, to pay. The deed of the *Court-street* lot, given in *March*, 1794, recites such an agreement, and the possession of that lot ought not to be taken from the representatives of the testator, until the arrears of that annuity, up to the testator's death, are discharged. I shall, accordingly, retain the injunction, until the amount of those arrears be ascertained by a master, and paid to the executors of *Wendell*, or are brought into court.

With respect to the lands contained in the deed of *August*, 1794, it appears that most of them were conveyed by the testator to third persons, for valuable considerations, and by deeds of warranty, subsequent to the date of the deed to the defendant; and it becomes a very important question, whether, under the circumstances of this case, the court can permit that deed to operate, except upon lands of which the testator died in possession, and which he had not conveyed since the deed of 1794. Perhaps I cannot take any effectual step under the present bill to silence or extinguish the claim of the defendant to the lands conveyed by the testator, though covered by the deed of *August*, 1794; but as the merits of the question are so fully before me, it may be convenient to the defendant that I should express an opinion on the point.

The deed of the 6th of *August*, 1794, has no recital, and is a plain deed, in fee, of all the testator's interest, present and future, although, by the contract of the 9th of *July*, 1792, (and of which this deed was, as the defendant admits, in part performance,) the testator was to retain a life estate in the premises. The deed is inconsistent with that reservation, and does not truly express the intent and meaning of the parties; for all the evidence shows, that the original agreement was never varied on this point, and we find that a life estate was actually enjoyed by the testator. When a deed, as the Lord Chancellor said, in *Walt* v. *Grove*, (2 *Schoale*

---

1815.

W ENDELL
v.
VAN RENSSE-
LAER.

---

A deed, false in a material point, is not entitled to full credit.

*& Lefroy*, 492.,) is shown to be false in a material point, it cannot have the credit due to unimpeached testimony. It must be reformed, and be set aside in whole or in part, and on such terms as justice may require. In this case, however, as the grantor, notwithstanding the absolute nature of the deed, continued to enjoy the land unmolested down to the time of his death, there was no bad faith as between the parties to the deed ; and the false language of it is a material circumstance only when we come to consider the fairness of the transaction as respects the world, and the weight due to the deed upon purchases made by third persons from the grantor, since its execution. It was not only a deed untrue on its face, but it was carefully concealed from the knowledge of the world ; and throughout all the transactions between the parties, there was an intentional secrecy as to the contract of 1792, and the deeds of 1794. By this means, false colours were held out to the world, and the public were permitted to consider the property as belonging to the testator, and to treat with him as the absolute owner. The various purchases from the testator, made by *Stewart Lewis*, by the *Websters*, by the *Gills*, by *Turner*, and by *Tallman*, conclusively establish this fact. The defendant, in his answer, admits it to be probable, that an opinion very generally prevailed, and was entertained by the inhabitants of *Albany*, that the testator continued owner of the land, between the date of the deed and his death. The purchases made from him, from time to time, of parts of the premises, were matter of public notoriety ; the various and great improvements going on under those purchases were in full view from the very residence of the defendant, and his knowledge of these purchases is, in some instances, admitted or proved ; yet, from 1794 to 1808, he preserved a studied silence, and gave no notice to those purchasers, or to the world, of his title. After this, he cannot be permitted to start up with a secret deed, (in itself of such doubtful credit,) and take the land from *bona fide* purchasers under the testator. Having,

1815.

WENDELL
v.
VAN RENSSE-
LAER.

1815.

WENDELL
v.
VAN RENSSE-
LAER.

A person look-
ing on and suffer-
ing another to
purchase and ex-
pend money on
land, without dis-
closing, or making
known, his claim
to the land, will
not be permitted,
afterwards, to as-
sert his legal title
against such inno-
cent purchaser.

for such a length of time, suffered the public to deal with the testator as the real owner, he cannot now be permitted to question, or disturb, any title which has thus been procured by his tacit assent. There is no principle better established in this court, nor one founded on more solid considerations of equity and public utility, than that which declares, that if one man, knowingly, though he does it passively, by looking on, suffers another to purchase and expend money on land, under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person. It would be an act of fraud and injustice, and his conscience is bound by this equitable estoppel. *Qui tacet, consentire videtur. Qui potest et debet vetare, jubet.* (*The East-India Company* v. *Vincent*, 2 *Atk.* 83. *Hanning* v. *Ferrers*, 1 *Eq. Cas. Abr.* 356. pl. 10. *Gilbert's Eq. Cas.* 83. *Raw* v. *Potts, Prec. in Ch.* 35. *Hunsden* v. *Cheyney*, 2 *Vern.* 150., and the case of Dr. *Amyas*, there cited. *Styles* v. *Cowper*, 3 *Atk.* 692. *Jackson* v. *Cator*, 5 *Ves.* 688. *Dann* v. *Spurrier*, 7 *Ves.* 231.) Though the right of the party, who thus misleads third persons by his silence, be merely a reversionary interest, subject to a life estate in the person whom he suffers to act with the property as owner, yet, as appears from several of the cases, the application of the principle is the same.

The following decree was entered:

"That the deed of conveyance in the pleadings and proofs mentioned, from *Philip Wendell*, deceased, to the defendant, bearing date the 6th day of *August*, 1794, for two certain lots of ground therein described as Nos. 2. and 3., situate in the first ward of the city of *Albany*, fronting the new street called *Wendell-street ;* and for a piece of pasture, or hay land, therein also described, as situate in the first ward of the city of *Albany*, has become, and is, void and inoperative in law, as far as the same deed comprehends, or relates to, lands and premises therein mentioned and described,

or thereby intended to be conveyed, and which the said
Philip Wendell, deceased, in his lifetime, after the day of
the date of the said deed, conveyed to any other person or
persons, bona fide, for valuable consideration.  And it sa-
tisfactorily appearing to this court, from the pleadings and
proofs in the cause, that Philip Wendell, deceased, in his
lifetime, and after the 6th of August, 1794, conveyed, as
aforesaid, in fee simple, to third persons, all the lands and
premises in the aforesaid deed mentioned and described, and
thereby intended to be conveyed, excepting lot No. 2.,
fronting on the street called Wendell-street: Whereupon, it
is further ordered, adjudged, and decreed, that the defend-
ant, Killian K. Van Rensselaer, shall execute and deliver
to the plaintiffs in this cause, a release, sufficient in the law,
to release, exonerate, and discharge the plaintiffs, as the real
and personal representatives of Philip Wendell, deceased,
from the covenant of warranty, in the deed of conveyance
contained; and from all covenants, expressed or implied, in
the said deed of conveyance, which would, or might,
render the plaintiffs, any, or either of them, as real or per-
sonal representatives of Philip Wendell, deceased, liable to
the defendant, his heirs, executors, administrators, or assigns,
for the title of the lands and premises in the deed mention-
ed and described, or thereby intended to be conveyed, ex-
cept as to lot No. 2., and from all damages in conse-
quence of a failure of such title ; and that the form of such
release be settled by a master in chancery, in case the par-
ties disagree respecting the same.  And it is further de-
clared, adjudged, and decreed, that the deed of conveyance,
from Philip Wendell, deceased, to the defendant, of the 6th
of August, 1794, and the covenants therein contained, as
far as regards lot No. 2., remains in full force, as it re-
spects the plaintiffs in this suit, any, or either of them.
And it is further ordered, adjudged and decreed, that the
other deed of conveyance, in the pleadings and proofs men-
tioned, from Philip Wendell, deceased, to the defendant,

bearing date the 17th of *March*, 1794, for a certain lot of ground therein described, as situate adjoining *Court-street*, in the first ward of the city of *Albany*, is unimpeached, and remains effectual according to the tenor thereof, and is hereby declared to be established against the plaintiffs; and to the benefits whereof the defendant shall be entitled, to take effect as hereafter mentioned, and hereafter to be provided for and decreed. And it is further ordered, adjudged, and decreed, that the plaintiffs are entitled to, and do recover and receive from the defendant, the annuity or yearly sum of 50 dollars, which it appears, from the pleadings and proofs in the cause, the defendant agreed to pay to *Philip Wendell*, during his life, and which yearly sum the defendant paid to *Philip Wendell*, up to the 17th of *March*, 1799, and no longer. And for the purpose of ascertaining what is due to the plaintiffs for the arrears of the annuity, or yearly sum, it is further ordered, adjudged, and decreed, that it be referred to a master in chancery, to take and state an account thereof, from the 17th of *March*, 1799, until the 8th of *December*, 1808, when *Philip Wendell* died; and that the master, in taking and stating the account, compute and allow interest on each of the yearly sums, from the time the same ought to have been paid until the report; and that the master, also, take an account of the rents and profits of the lot of ground and premises, situate adjoining *Court-street*, in the first ward of the city of *Albany*, which have been received by the plaintiffs, *Barent Bleecker* and *Sanders Lansing*, as executors of the last will and testament of *Philip Wendell*, deceased, from the decease of *Philip Wendell*; and in taking such account, the master shall make all just allowances for improvements, permanently useful, made upon the last mentioned lot of ground by *Philip Wendell*, in his lifetime, after the 17th of *March*, 1794, and which now remain; and that he, also, make all just allowances for improvements, permanently useful, repairs and taxes, or other necessary and proper expenditures by the plaintiffs upon, or an account of, the lot

of ground and premises, since the decease of *Philip Wen-*    <span>1815.</span>
*dell;* and that the master report thereon with convenient     TEN BROECK
speed.    And it is further ordered, that the injunction issued        v.
in this cause be continued until the master's report shall     LIVINGSTON.
come in, and till further order; and that the question of
costs, and all further directions, be reserved for the further
consideration of the court."