*Cooper*, for the plaintiff.

*Rariden*, for the defendant.

---

### JAQUES *v.* The BOARD of COMMISSIONERS of VIGO County.

*A.* having obtained a judgment against a county, purchased, under an execution on the judgment, a number of town lots belonging to the county. Afterwards, at a public sale of these lots by the county, *B.* bought one of them for a small sum with notice of the previous sale, paid the purchase-money, took a receipt for the same, and entered into possession. *A.* died, and the county made a compromise

Nov. Term,
1831.

JAQUES
v.
THE BOARD OF
COMMISSION-
ERS OF VIGO
COUNTY.

with his heirs, who released their interest in the said lots to the county, on receiving back the purchase-money paid by *A.*; the purchasers at the said public sale, *B.* among the rest, agreeing by parol to release their interest in the lots to the county on being re-paid their purchase-money. The county tendered to *B.* his purchase-money for the lot he had bought, which he refused to accept; and he refused also to execute the release. *C.*, afterwards, with *B.'s* knowledge and without any objection by *B.*, purchased the last-named lot of the county, and received a deed from the county for the same.—A bill in chancery, filed by *B.* against the county to obtain a title for the lot thus bought by *C.*, was dismissed for want of equity.

Monday,
November 7.

M'KINNEY, J.—This is a suit in equity for the specific performance of a contract to convey land. It has been transferred from the *Vigo* Circuit Court previous to a decree, the President Judge having been engaged as counsel in the cause.

The complainant alleges, that he purchased of the defendants lot 132 in the town of *Terre-Haute*, the payment of the purchase-money, and the refusal of the defendants to execute a quit claim deed, agreeably to the terms of the sale; that, by consent of the defendants, he took possession of the lot and made improvements thereon; and prays specific performance. The defendants, in their answer, admit the sale and payment of the purchase-money. They, however, introduce new matter, which the complainant is called upon to answer. They charge that complainant, prior to his purchase of the lot, knew that it and others belonging to the county of *Vigo*, had been sold under an execution, issued on a judgment against the county in favour of *John Brocklebank*; that they were purchased by him, and that deeds were executed; that after the sale to complainant, by an agreement between the defendants and the executor and heirs of *Broklebank*, the latter released to the county their interest in said lot and others purchased under the said judgment, on receiving from the county the purchase-money which had been paid for the same. They further charge, that they would not have entered into the agreement with the heirs of *Brocklebank*, had not the complainant and others who had purchased lots at the time complainant did, agreed that if the defendants entered into that agreement, an assignment of their interests in the lots should be made, on receiving back the purchase-money which had been paid; that this was done to enable the county to secure a good title to the lots; that the agreement has been complied with by all the parties, except the complainant, by releases executed and pay-

Nov. Term,
1831.

JAQUES
v.
THE BOARD OF
COMMISSION-
ERS OF VIGO
COUNTY.

ment of the purchase-money; that the complainant has refused to receive the purchase-money, it having been tendered, or to release his interest to the lot; that he did not refuse to release his interest until after the heirs of *Brocklebank* had released to the county; that since the release by the said heirs, the defendants have sold the lot to one *Ross*, and executed a warranty deed for the same; that the sale was made to *Ross*, with the knowledge of the complainant and without any objection being made by him. The complainant, in his answer to the new matter, admits his knowledge of the purchase of the lot by *Brocklebank*, but says he did not believe it valid; denies that he agreed to assign his interest to the county, on condition that the heirs of *Brocklebank* released their interest; denies knowledge of such release being made except from hearsay; denies the tender of the purchase-money. The depositions fully support the defensive matter charged in the defendants' answer.

The case presents a single question: Is the agreement by the complainant, to assign his interest in the lot in controversy, obligatory upon him? It is contended that it is by parol, without consideration, and consequently void. If this were so, it is clear that it would be inoperative. A view of the case, it is thought, will warrant a different conclusion. The lot was owned by the county of *Vigo*. It had been sold on an execution against the county. The complainant afterwards purchased it on a sale for taxes. He held a tax-title. The validity of his title had not been established. He had purchased with a knowledge of the prior sale. The defendants and the representatives of the purchaser under the execution entered into an agreement, by which the latter released to the county their interest in that and other lots purchased under the execution, upon having refunded by the county the money paid for them. This agreement was entered into by the defendants on condition that the complainant, and others who had purchased lots at the time of complainant's purchase, should also release their interests in the lots to the county, upon re-payment of the purchase-money. To this agreement the complainant was a party. The defendants were unwilling to refund to the heirs of *Brocklebank* the purchase-money of the lots, unless the subsequent purchasers would release their interest. They agreed to do so, upon receiving the money they had paid. The title of the

Nov. Term,
1831.

JAQUES
v.
THE BOARD OF
COMMISSION-
ERS OF VIGO
COUNTY.

county would thus become perfect. The agreement appears to have been executed by all except the complainant. Having induced the defendants by his agreement to release, to repay to the heirs of *Brocklebank* the purchase-money of the lots, and having acquiesced in a sale since made by the defendants of the lot, it would surely be contrary to every principle of justice, that he should now be permitted to enforce a title. The defendants have complied with their agreement. They tendered the purchase-money and it was refused. A conveyance now decreed to the complainant relieves him from a struggle with a prior title. It enables him to take advantage of his own wrong. This the law does not permit, nor does it regard fraud as the subject of its favour.

We have not had before us the written agreement, which it is said cannot be waived. It appears that a receipt was given to the complainant. Its terms however do not appear. A mere receipt for money will not, of itself, constitute a right to the specific performance of a contract for the conveyance of land. *Ellis* v. *Deadman's heirs*, 4 Bibb, 467.—Sugd. on Ven. 46. If the receipt contained the terms of the agreement, *it is* clear its performance has been waived by the complainant. That an agreement in writing may be waived by parol is well established. *Botsford* v. *Burr*, 2 Johns. Ch. Rep. 405.—Sugd. on Ven. 97.—Rob. on Frauds, 89.—*Price* v. *Dyer*, 17 Ves. 356.—*Lucas* v. *Mitchell*, 3 Marsh. 245 (I). The sale of the lot to *Ross* by the defendants, without objection on the part of the complainant, shows the light in which he viewed the agreement he had entered into. Had he deemed his title subsisting, it may well be supposed he would have made it known and resisted the sale. He, however, remains silent. If such conduct, a fraud upon *Ross*, would have enabled him to enforce a conveyance, the defendants in resisting the present claim should succeed. That *Ross* could have enforced a title, it is thought, is clear. *Wendell* v. *Van Rensselaer*, 1 Johns. Ch. Rep. 344.—*Dann* v. *Spurrier*, 7 Ves. 231.

If this bill were sustained, and a decree granted agreeably to its prayer, the principle of equity would be reversed, which requires a party who invokes its aid to appear with clean hands, and a triumph afforded to fraud. The bill must be dismissed with costs.

*Per Curiam.*—The bill is dismissed with costs.

*Cone*, for the complainant.

*Farrington*, for the defendants.

Nov. Term,
1831.

(1) A parol waiver and abandonment of an agreement duly signed, may be set up as a defence to a bill for specific performance; but the circumstances must be such as to evince an intention in the parties that there should be a total dissolution of the contract, placing them in the same situation in which they stood before the agreement was entered into. *Robinson* v. *Page*, 3 Russ. 114.—2 L. L. M. 698.