DAVID COLBY *versus* EDWARD P. NORTON *& al.*

A mistaken location of the line between the owners of contiguous lots, is not conclusive between the immediate parties to such location, but as between them the mistake may be corrected.

If one making such erroneous location, sees a third person take a conveyance for a valuable consideration, according to the monuments by him located, he will be concluded thereby.

Ignorance of the true state of his own title, will not excuse a party who by his own representations has misled, though innocently, a purchaser.

THIS was an action of trespass *quare clausum*. Plea, the general issue. A brief statement was filed, in which De Have Norton, as the owner of the premises in dispute, and Edward P. Norton, his servant, defended the several acts for which this suit was brought. The parties were owners of contiguous land, the boundary of which was the question in dispute.

From the report of the case by WESTON C. J. who tried the cause, it appeared that the range lines of the lots in the town of Madison, where the premises were situated, had been surveyed and marked, but the checks on said lines were not run. In the range which embraced the lot in dispute, the corners were marked and numbered on the west line, but not on the east line. The plaintiff, to prove his title, read in evidence a deed dated Feb. 23, 1818, from Peter Sanborn and others, of

part of lot No. 71, beginning at the south-east corner of the same, and thence running north sixty rods.

The north and west lines, and the south-west corner of 71, as delineated in the plan made of the premises in dispute, were proved. The plaintiff was the owner of land south of lot 71. The deed before referred to, conveyed to the plaintiff that part of the lot east of the road on the plan, which passed diagonally through the lot.

William Allen, the surveyor, testified, that from the acknowledged south-west corner of No. 71, to the north line, the distance was one hundred and three rods, and four fifths; that from the same south-west corner he followed an old line easterly, and the same course being pursued, brought him to L on the plan. It appeared, that the old line, leading to L, was run and marked by the plaintiff. The line from the S.W. corner to K, is parallel with the north line, making each end of the lot of equal width. If the sixty rods conveyed to the plaintiff commenced at L, it would give him half of the *locus in quo*; if at K, the whole of it. Forty-nine rods measured from the acknowledged north-east corner, would fall short two or three links of the monument at which the defendant's fence commenced.

The defendants introduced a deed from Thomas Jenness, in whom the title then was, to Sam'l C. Walker, dated June 11, 1824, conveying "part of lot 71, beginning on the north side of said lot, thence carrying the whole length of said lot 49 rods;" also, a deed from said Jenness, (to whom the land had been re-conveyed by Walker,) to John G. Neil, "of all that part of said lot unconveyed to David Colby, and is to be laid out forty-nine rods in width, the whole length of the lot:" also, a deed from said Neil to Edward P. Norton, dated March 5, 1830, "of the part of lot No. 71, which I own by conveyance of Thomas Jenness, according to his deed, dated Nov. 10, 1829;" also, a deed of release from David Colby to John G. Neil, dated March 5, 1830, "of the north part of lot numbered seventy-one, and is all that part of said lot unconveyed to me by Thomas Jenness, and is that part of said lot conveyed

to John G. Neil by Thomas Jenness;" also, a deed from Thomas Jenness to David Colby, dated Sept. 5, 1827, of part of lot numbered 71, "beginning at the County road, running westward to the south-west corner of said lot, thence north about sixty rods to land that I sold to Sam'l C. Walker, thence eastwardly on said Walker's line to the County road, thence on said road to the first mentioned bounds; it being all the land I own in lot 71."

William Thurston testified, that Jenness and the plaintiff, in June 1824, called upon him to run out the land first conveyed to the plaintiff; that Jenness might ascertain how much he had left on the northerly side, to convey to Walker, who with De Have Norton, and others were present; that Jenness submitted it to the plaintiff to determine where the starting point should be, namely, the south east corner of the lot; that the plaintiff shew a corner from which they started, and he measured off for him sixty rods at the east end of the lot, and put up a monument at its termination; he then measured the space from the monument to the north line; that he found the distance two or three feet from forty-nine rods; that Jenness conveyed to Walker by deed, that day, forty-nine rods, to which the plaintiff made no objections.

The plaintiff then called Nathaniel Blackwell, who testified that he measured the west end of the lot and found it one hundred and four rods wide. Both parties were present, and said that on the west side of the road, Norton owned forty-nine rods, and the plaintiff the remainder, and on the east side, the plaintiff owned sixty rods and Norton the remainder.

John Holbrook testified, that in June 1824, he was one of Thurston's chain-men; that Jenness called upon the plaintiff to point out the starting point; that the plaintiff hunted round for the corner, but witness did not recollect seeing any monument; that plaintiff pointed out a spot from which he directed them to start, saying that he knew of no point nearer; that they measured off sixty rods, and put up a monument, a part of which is still standing and is the starting point of the defendants' fence; that they then measured the space thence to

the north line, and found it a few feet short of forty-nine rods, but Jenness said it was so near, he would deed to Walker, forty-nine rods; the plaintiff objecting to his conveying more than there was.

Plan of Lot No. 71, in Madison.

E. F. on which the trespass is alleged to have been committed is claimed by both parties. Colby has enclosed the west half, and Norton the east half by fence.

This plan A, B, I, K, represents the lot No. 71, in Madison, being one mile in length, and one hundred and three rods and twenty links in breadth, according to the lines run by the surveyor, at the request of David Colby, and the dividing line as claimed by him is from C to D, and from M to N, giving De Have Norton, jr. the northerly part of the lot, 49 rods in width, on the west side of the old county road, and 43¼ rods wide on the east side of the road.

De Have Norton, jr. admits that the corners A, and B, and the line C, D, are correct unless he is entitled to one full half part of the lot, in that case he claims to the dotted line G, H; but claims at least 49 rods in width the whole length, making C, D, O, the dividing line; he also claims to have the south line of the lot run from I to L, making the east end of the lot 2¼ rods wider than the west end. The piece E, F, being about 72½ rods long and 5½ rods wide, is claimed by both parties.

The defendants then produced the record of a former suit for a trespass on the same land, in favor of the plaintiff against De Have Norton, one of the defendants, in which the defendant prevailed.

A nonsuit was entered by consent, subject to the opinion of the Court — and it is agreed that from the foregoing evidence, the Court may draw such inferences as the jury might do; and if in the opinion of the Court the action is sustained the nonsuit is to be set aside — the defendants defaulted, and judgment to be rendered for the plaintiff, for ten dollars damages and costs, otherwise the nonsuit is to stand.

*Tenney*, for the plaintiff. The plaintiff's title accrued in 1818, six years after Jenness sold to Walker, at which time there was an admeasurement of the land to be conveyed, at which the plaintiff was present, but in which he had no interest. He then pointed out the south-east corner of the lot but in so doing was mistaken. He is not bound by such mistake. Lands can only be conveyed by deed — a mere verbal statement, especially when the party making it is mistaken, cannot pass the title to real estate. *McMillan* v. *Eastman*, 4 Mass. R. 383 ; *Kimball* v. *Merrill*, 4 Greenl. 368 ; *Vose* v. *Hardy*, 4 Greenl. 322 ; *Bott* v. *Burnell*, 11 Mass. R. 163 ; 1 Stark. Ev. 138 ; 3 Stark. Ev. 995 ; *Gove* v. *Richardson*, 4 Greenl. 327 ; *Linscott* v. *Fernald*, 5 Greenl. 496.

The release of Colby to Neil conveys no portion of the land derived from Jenness and others. The intention of the parties, as ascertainable from their situation, and from the subject matter of the contract, must govern. *Sumner* v. *Williams*, 8 Mass. R. 214 ; *Fowle* v. *Bigelow*, 10 Mass. R. 379 ; *Wallis* v. *Wallis*, 1 Mass. R. 218 ; *Hopkins* v. *Young*, 11 Mass. R. 302 ; *Ellis* v. *Welsh*, 6 Mass. R. 246 ; *Leland* v. *Stone*, 10 Mass. R. 460 ; *Worthington* v. *Hylyer*, 4 Mass. R. 196 ; *Wilson* v. *Troup*, 2 Cow. 195 ; *Watson* v. *Boylston*, 5 Cow. 411 ; Com. on Contracts, 23. Jenness could not have intended to convey to Walker or Neil any portion of the lot previously conveyed. He expressly says, " all that part unconveyed to Colby." So Colby, by his deed of release, uses

the same form of expression, releasing all unconveyed, &c. He did not thereby intend to diminish his sixty acres. Neil, the same day, conveys what he acquired from Jenness to the defendant, but he did not thereby intend to convey any portion belonging to the plaintiff. The plaintiff should have, his deed being first, the number of rods therein described — and the residue only should belong to the tenants.

*Wells*, for the defendants. The boundary between the parties is determined by the survey of 1824, at which the plaintiff was present and when he fixed the starting point from which the location was made. Those from whom the defendants derive title, purchased, relying on the correctness of the monuments then established, and it would be a fraud in them to permit the plaintiff now to recover. *Hatch* v. *Kimball*, 13 Maine R. 146. This, if not conclusive, is at any rate very strong evidence of the true boundaries of the parties. *Gove* v. *Richardson*, 4 Greenl. 327 ; *Dryden* v. *Jephersen*, 18 Pick. 390. If there was a mistake, the plaintiff must be bound by it. The record of the former judgment was admissible. 1 Stark. Ev. 206 ; *Eastman* v. *Cooper*, 15 Pick. 276.

The opinion of the Court was delivered by

WESTON C. J. — The plaintiff, at the time of his purchase from Sanborn and others, was the owner of the adjoining land south. If therefore he extended the southerly line of his new purchase, on number seventy-one, farther south than it ought to go, he thereby restricted the limits of the land he owned before. Jenness, who was one of the grantors in his deed, and the owner of the residue of seventy-one, being about to sell part of it, was desirous of ascertaining how far the plaintiff was entitled to go northerly. Thereupon his sixty rods were measured off, from a starting point shown by himself, and a monument put up at their termination in his presence. In this location, Jenness relied upon the plaintiff, who lived on or near the premises. It was the establishment of bounds between the owners of contiguous lands, which ought not lightly to be disturbed. If, however, a mistake can be clearly shown, which

may be considered as having been done in the present case, a location thus made is not conclusive between the immediate parties. A correction of the mistake between the plaintiff and Jenness, could take nothing from the latter, which in justice and equity he ought to retain. But as against the grantee of Jenness, the case is differently presented.

The monument was put up for the avowed purpose, and this known to the plaintiff, of apprising Walker, the purchaser from Jenness, how far he would be entitled to go southerly. Jenness thereupon conveyed to Walker, by a general deed of warranty, the northerly part of number seventy-one, extending from the north line, southerly, forty-nine rods in width. This conveyance was made on the same day the monument was put up, and without objection on the part of the plaintiff. It is now found, by actual admeasurement, that forty-nine rods, from the northerly line, will terminate at the monument. And to that point, from which their fence runs, by a continuous line westerly, Walker, and those who held under him, have extended their cultivation and improvement. The plaintiff assumes to know how far his land extended northerly, he proceeds to locate it in his own way, he assists in putting up a monument marking its north-easterly limits. In pursuance of this location, he sees a third person take a conveyance, for a valuable consideration, of the owner of the land adjoining, extending to that point. If he had witnessed such a conveyance, and had been merely passive, it has been held, that he would have been concluded. 1 Johns. Ch. 344; *Hatch* v. *Kimball*, 16 Maine R. 146.

If it should be said the plaintiff acted under a mistake, there are cases, where ignorance of title will not excuse a party; " for if he actually misleads a purchaser by his own representations, though innocently, the maxim is justly applied to him, that where one of two innocent persons must suffer, he shall suffer, who, by his own acts, occasioned the confidence and the loss." 1 Story's Com. on Equity, 377, § 387, and the cases there cited.

Colby v. Norton.

But there is strong proof of the acquiescence of the plaintiff in this location, under his hand and seal, made sixteen years after Walker's purchase, he and those holding under him, in the mean time having claimed and occupied the forty-nine rods. In November, 1829, Jenness, who had re-purchased of Walker, conveyed to John G. Neil the north half part of number seventy-one, " all that part of said lot unconveyed to David Colby, and is to be laid out forty-nine rods in width, the whole length of the lot, to contain ninety-eight acres more or less." And in March, 1830, the plaintiff, by his deed, released to Neil, with warranty against all persons claiming under him, all that part of lot, number seventy-one, unconveyed to him by Thomas Jenness, " and is that part of said lot, conveyed to John G. Neil by said Jenness, containing ninety-eight acres more or less." It may be contended, that the controlling part of the description is, that it embraced what Jenness had not conveyed to him. But it referred to and confirmed the deed from Jenness to Neil. That declared the land conveyed to be forty-nine rods wide in its whole length. That accorded with the uniform actual possession. Nobody but the plaintiff could restrict its width. He took an active part in the location, when it was first made. He had acquiesced in its continuance ; and finally by deed, ratified the conveyance by Jenness to Neil, describing the land, in its whole extent, to be forty-nine rods wide. In our judgment he ought not now to be permitted to disturb a line, established from the beginning with his privity and assent. The effect of the deed from the plaintiff to Neil, under whom the defendant claims, is not impaired upon the ground, that it may have been made with a view to extinguish any color of title, the plaintiff may have derived from other sources.

*Nonsuit confirmed.*