INHABITANTS OF DIXFIELD *versus* JACOB NEWTON.

A quitclaim deed by a mortgagee, and the delivery of the notes secured by the mortgage to those to whom the deed is made, operate as an assignment of the mortgage.

If a person having a claim to land, and with a full knowledge of his rights, suffer another in his presence, without making known his claim, to purchase of a third party, and expend money on the land under an erroneous impression that he is acquiring a good title, he cannot afterwards be permitted, in equity, to enforce his legal rights against such purchaser.

But if a mortgager suffer such sale of the mortgaged premises, under a reasonable misapprehension that there had been a foreclosure, and that his right of redemption had expired, he does not thereby lose his rights.

Such a conveyance was made to a town by deed and the notes secured by mortgage transferred, the mortgager being present and assenting under a misunderstanding of his rights. The mortgager released certain claims he had against the town, and the town contracted to convey the premises to his son-in-law, on condition that he should support the mortgager and his wife: — *Held*, that this arrangement did not change the position of the parties in relation to the title to the land.

After the notes and deed, as above, were delivered to the committee of the town, the notes were passed by them into the hands of the mortgager: — *Held*, that such delivery did not constitute a redemption of the mortgage, no value having been paid by him therefor.

ON REPORT from *Nisi Prius*, APPLETON, J., presiding.

This was a writ of entry to recover possession of a certain farm in the town of Dixfield. The defendant pleaded the general issue, and payment of the notes mentioned in the mortgage from Jacob Newton to John C. Kidder, hereinafter referred to in this case.

The demandants then put into the case a deed of quitclaim from John C. Kidder to them, dated April 2, 1844, acknowledg-

ed the same day, and recorded May 22, 1844. They also put into the case a deed of mortgage from Jacob Newton to said Kidder of the same premises, dated January 30, 1837, acknowledged the same day, and recorded May 11, 1837, the condition of which mortgage was to secure the payment of $248, according to certain notes of hand therein described.

The points at issue in the case are stated in the opinion of the Court.

*May*, (with *R. Washburn*,) for plaintiff, contended —

1. That the giving of the quitclaim deed by Kidder, and the delivery of the notes, passed all the interest of Kidder in said premises and in the mortgage and notes to the town, and that if the town had not given up to the defendant his notes, its title under the mortgage would have been perfect, at least as mortgagee. *Dockray* v. *Noble*, 8 Maine, 272; *Warden* v. *Adams*, 15 Mass. 233; *Freeman & al* v. *McGaw & al*. 15 Pick. 82.

2. That the notes were surrendered to Newton, the mortgager, under a mistake, and upon the supposition of all parties, that the mortgage being foreclosed absolutely, the notes were worthless. This is no payment and no discharge of the mortgage. *Olcott* v. *Rathbone*, 5 Wend. 490; *Arnold* v. *Cram*, 8 Johns. 79.

That the giving up of the notes in ignorance of the facts, under the supposition that they had been fully paid, is not a payment or discharge. *Fowler* v. *Ludwig*, 34 Maine, 455; *Lightbody* v. *Ontario Bank*, 11 Wend. 9; *French* v. *Price*, 24 Pick. 13.

3. The defendant is estopped by his acts and declarations at the time of the conveyance from Kidder to the town, from setting up any claim to the premises, and to deny that the mortgage given to Kidder is paid, or that it is effectually and absolutely foreclosed. *Hatch* v. *Kimball*, 16 Maine, 146; *Colby* v. *Norton*, 19 Maine, 412. Such also is the rule in equity. *Mathews* v. *Light*, 32 Maine, 305; *Fay* v. *Valentine*, 12 Pick. 40, and cases there cited. This is a case directly in point; and in the case of *Hatch* v. *Kimball*, be-

fore cited, the Court say, that these principles have been adopted in the common law courts.

*C. W. Walton*, for defendant.

TENNEY, C. J. — At the time John C. Kidder delivered his quitclaim deed of the premises in question, to the plaintiffs, it is admitted that the mortgage to him from the tenant had not been foreclosed, the means taken to effect a foreclosure having proved abortive.

The deed of Kidder, and the delivery of the notes secured by the mortgage to him, to the committee of the plaintiffs, appointed for that purpose, operated as an assignment of the mortgage. *Dockray & ux.* v. *Noble*, 8 Maine, 278.

It appears however from the case, that the original mortgagee took measures to foreclose the mortgage, and supposed that a foreclosure had been perfected, when he delivered his quitclaim deed to the plaintiffs; and in the negotiations between him and the committee of the town of Dixfield, to which the tenant was a party, and was consenting, if the whole was not done by his procurement, the title of the mortgagee was treated by all as absolute and indefeasible. It is hence contended, that the tenant cannot set up the right under his mortgage, which he had before the conveyance to the plaintiffs, he having seen them pay a consideration for an indefeasible title.

There is no principle better established, nor founded on more solid considerations of equity and public utility, than that which declares, that if one man knowingly, though he does it passively by looking on, suffers another to purchase and expend money on land, under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted, in a court of equity, to exercise his legal right against such person. It would be an act of fraud and injustice, and his conscience is bound by this equitable estoppel. 1 Johns. Ch. 344. And ignorance of the law, with full knowledge of the facts, cannot be set up in avoidance of this principle. 6 Johns. Ch. 166.

" But the essential ingredient, which destroys his own title, is the knowledge that the purchaser is deceived with respect to the title, and that he must suffer by it, and the neglect, when he has an opportunity to do so, to undeceive him and save him from injury." *Wilton* v. *Harwood,* 23 Maine, 131.

It does not appear from the case, that the tenant withheld any knowledge, which he actually possessed, touching the foreclosure of the mortgage. It is to be supposed, that whatever was done to cause a foreclosure, was caused by Kidder, the mortgagee, and he was a party to the conveyance. It is manifest from the case, that he believed he had an absolute title to the premises. The committee of the town, as may be well inferred from their declarations, had satisfied themselves on this point, without the least reliance upon the silence of the tenant, when it was asserted in his presence, that the mortgage had been foreclosed by a publication of a notice in some newspaper, and that the time of redemption had expired, and the mortgagee's title was absolute. The committee had the same opportunity of ascertaining fully, what had been done to cause a foreclosure, that the tenant had, and when they were about to take a deed to the.town, they were as much interested to make the inquiry as he had previously been. It is very evident that the mortgagee, the mortgager and the committee fell into an error touching the means taken to foreclose, which was common to all of them, and that all were ignorant of certain irregularities and defects in those means, which prevented the result, which all honestly supposed had been accomplished. The tenant, therefore, has been guilty of no fraud meditated against the interest of the purchasers, and the principle involved for the purpose of making him the sufferer, will not apply to the facts of the case.

In the arrangement touching the conveyance from Kidder to the plaintiffs, the tenant released certain claims which he had made against the town, and the town contracted to convey the premises to his son-in-law, on condition that he should provide support to the tenant and his wife. This

arrangement cannot change the legal rights of the parties, in relation to the title in the land.

After the notes secured by the mortgage were delivered by Kidder, the mortgagee, with the deed of quitclaim, to one of the committee, the same notes were passed into the hands of the tenant. Can this surrender of the notes to the mortgager be treated as a redemption of the premises mortgaged?

It was no part of the contract between the parties to the mortgage, and the committee of the town, that the tenant was entitled to the notes. After the delivery of the deed to the plaintiffs, and the final conclusion of the arrangements which resulted in the contracts, the notes were considered by all as worthless, they having been cancelled, as they supposed, by the acquirement by Kidder of the title, which the tenant had before foreclosure held in himself. But the mortgage being in fact open at that time, the notes were unpaid, and so continued till the institution of this suit. Under the mutual mistakes, which occurred at the time of the transaction, the destruction of the notes would not have operated as payment thereof. *Davis* v. *Maynard,* 9 Mass. 247. And the mistaken surrender of them to the maker, can on no principle have a greater effect. Before the tenant can be entitled to the premises, discharged of the mortgage, full payment of the amount due thereon must be made.

The conveyance from Kidder to the plaintiffs was a transmission of his rights under the mortgage, which placed the legal title to the premises in them, subject to redemption; and they are entitled to the conditional judgment, as provided in R. S., c. 125, § § 7 and 9, and such may be entered.

RICE, HATHAWAY, CUTTING, and GOODENOW, J. J., concurred.