EMANUEL P. SCHECK, receiver of A. C. Windsor, Incorporated, complainant-respondent,

*v.*

JOHN F. BOWNE and EMIL C. MERTZ, defendants-appellants.

[Submitted February term, 1933. Decided April 27th, 1933.]

*Mr. Emanuel P. Scheck, pro se,* for the complainant-respondent.

*Messrs. Heine & Laird* (*Mr. Casewell Heine,* of counsel), for the defendants-appellants.

The opinion of the court was delivered by

CASE, J.

This is an appeal by the defendants, Bowne and Mertz, from a decree in chancery, advised by Vice-Chancellor Berry, setting aside an assignment of mortgage from A. C. Windsor, Incorporated, to Abram H. Cornish, trustee for appellant-defendants, and also setting aside an assignment of a retained percentage due the corporation under a construction contract between it and the board of chosen freeholders of the county of Essex. Six defendants were named in the bill.

A. C. Windsor, individually, had been engaged in a joint enterprise with Bowne and Mertz in the ownership and attempted sale of lands. Windsor bought out Bowne and Mertz, concealing the fact that Windsor was then negotiating for an advantageous sale. Immediately thereafter the sale was accomplished at a considerable profit to Windsor. Bowne and Mertz brought action, resulting in a holding that Windsor should account to his co-adventurers for the concealed profit. That finding in chancery was affirmed, on appeal, by this court. The chronology is of importance and appears below.

Windsor bought out Bowne and Mertz on January 3d, 1929, received a down payment on his sale of land January 19th, 1929, conveyed the property to the purchaser April 2d, 1929, and received as part of the consideration the $35,000

mortgage now in question. A. C. Windsor, Incorporated, was incorporated by a certificate of incorporation executed May 2d, 1928, filed in the Essex county clerk's office May 15th, 1928, and filed with the secretary of state April 25th, 1929. April 6th, 1929, Windsor assigned all of his assets including the mortgage, to the corporation in consideration for the issue to him by the corporation of two thousand four hundred and ninety shares of its capital stock. April 22d, 1929, he made a separate assignment of the mortgage, and of the bond accompanying the same, to the corporation. On May 6th, 1929, this assignment was recorded in the office of the clerk of Essex county. The corporation was then about to execute a contract with the board of chosen freeholders of the county of Essex for the construction of a hospital and was obliged to give a surety bond in the sum of $2,007,000. May 8th, 1929, the corporation furnished a financial statement, setting up the mortgage as an asset, to the bonding companies on its application for the bond, whereupon the bond was executed by the bonding companies. On May 21st, 1929, Bowne and Mertz filed their bill in chancery to hold Windsor as constructive trustee to an accounting for the secret profit. That was a personal action against Windsor and was neither an action *in rem* against the mortgage itself nor an action against the corporation. On July 22d, 1930, the court of chancery found in favor of Bowne and Mertz. *Bowne* v. *Windsor, 106 N. J. Eq. 415.* On appeal this court affirmed, May 18th, 1931. *108 N. J. Eq. 274.* Meanwhile, on January 29th, 1931, Windsor had had the corporation execute an assignment of the mortgage and of the retained percentage to Abram H. Cornish, trustee of Bowne and Mertz, the asignment being as security for Windsor pending and with respect to the appeal in that litigation. This assignment is now under attack. On March 16th, 1931, a receiver was appointed for the corporation. That followed the default of the corporation in its contract with the freeholders. As an incident to and consequent upon that default the bonding companies completed the contract at a loss to them of $53,736.32, for which amount they filed a claim with the receiver. Claims filed with the receiver

by other creditors bring the total up to $93,339.93, against which the receiver has in hand only a nominal sum.

The present bill of complaint was filed by the receiver on August 11th, 1931, to have the assignments to Cornish, trustee, declared null and void, to have the mortgage delivered up for cancellation and to restrain the payment of the retained percentage to anyone save the complainant. The appellant-defendants, in their answer, set up a defense based upon the ownership of the mortgage by the corporation and the right of the corporation to assign, though they counterclaimed that the forming of the corporation was a fraud upon all of Windsor's creditors.. Not until the matter came to final hearing, June 8th, 1932, did they set up the theory, upon which they now chiefly rely, that the corporation was not and could not have been the owner of the mortgage because Windsor held it as a constructive trust for the appellants. They did that then by leave of the court and the consent of the complainant.

The vice-chancellor found as a fact that "the knowledge of Bowne and Mertz (viz., of the execution of the mortgage and that it represented a secret profit to Windsor in which appellants should participate), it is quite evident, antedated the assignment to the corporation" and also that "Bowne and Mertz had both actual and constructive notice of the assignment." That finding has foundation in the testimony, and we accept it as a correct factual conclusion.

This leads logically to one of the legal conclusions on which the case turned below, namely, that the defendants are estopped by their conduct from now asserting a trust in the mortgage in their favor; for if the defendants were indeed the equitable owners of the mortgage, or a ratable portion thereof, then, knowing that the mortgage was about to be or had been assigned by its record owner to the corporation, whereby the latter could, by possession and the record title, lead others into believing, and into innocently extending credit on the belief, that the real title was where all *indicia* showed it to be, namely, in the corporation, it became their duty to speak; and if, under that duty, they chose to remain

silent, they should not be permitted to speak when conscience requires them to be silent. They were men of affairs. They had knowledge, not merely of the facts of the case, but of prevailing business methods. They knew that Windsor was assigning his securities to the corporation "to qualify for the job" with the Essex county board; yet for a period of three years they refrained from asserting ownership. Perhaps they had thought that the qualifying of the corporation for the award of that very considerable contract would ultimately net more to Windsor for their benefit than the value of the mortgage. However that may be, the principle is well established in the cases. It was stated thus by Vice-Chancellor Van Fleet in *Besson* v. *Eveland, 26 N. J. Eq. 468:*

"The rule thus stated, is simply a reasonable application of that great maxim of justice, which declares that he who is silent when conscience requires him to speak, shall not be permitted to speak when conscience requires him to be silent. *Fonb. Eq. 163; 2 Sm. Lead. Cas. 660; Wendell* v. *Van Rensselaer, 1 Johns. Ch. 353.* It is most frequently invoked against persons who, having a valid title to land, stand by knowingly, but passively, and permit some other person, also asserting a title to it, to make title to an innocent purchaser, without warning the purchaser of their rights; but every transaction falls fairly within its operation, where an innocent person, exercising reasonable prudence, has been misled to his injury by false lights or appearances held out with the consent or knowledge of the person subsequently alleging that the true state of affairs was totally different from what it seemed. * * *."

See, also, *Budd* v. *Atkinson, 30 N. J. Eq. 530; Rabe* v. *Dunlap, 51 N. J. Eq. 40; Todd* v. *Exeter Land Co., 104 N. J. Eq. 431, 435.*

We conclude that the defendants were, as the court below held, guilty of laches, and that as other parties, relying on the intermediate condition, extended credit and cannot be restored to their original position the defendants are estopped from the equitable relief sought in their counter-claim.

We deem it unnecessary to consider the further ground

expressed by the court below that the defendants had, by their conduct, established an election whereby they waived their rights as constructive *cestuis que trustent;* and we do not pass thereon.

The appellants-defendants present as point 5 of their brief that "the assignment from A. C. Windsor, Incorporated, to Cornish, as trustee, was not an *ultra vires* act as the corporate form was merely a shell and equity will look at the substance and disregard the form." The precise relation of this point to the appeal is not apparent, as the question of *ultra vires* is not otherwise raised. But the corporation was much more than a shell. The forming of the corporation under the laws of the State of New Jersey was admitted in the answer. The corporation had an active, if limited, life, in the course of which it entered into a large undertaking and incurred obligations which still subsist. The suggestion that the corporation was faced with imminent litigation by Bowne and Mertz and that it averted this proceeding by assigning the mortgage is without substantial support in the testimony.

It is further suggested that the receiver should be estopped from invoking the rule of estoppel against the defendants. No grounds, in fact or in law, are sufficiently shown why the receiver should be so estopped. Neither his own acts or omissions, or those of the creditors whom, in a way, he represents, lead to that result. As we have already said, the earlier proceedings were against Windsor, individually, and were not constructive notice of their existence to those whose business was with the corporation. No actual notice is shown. The absence from the record of more detailed proofs concerning the extent of the reliance by the bonding companies upon the statement of assets, including the mortgage, given by the corporation is squarely chargeable to the defendants who objected to the admission of the evidence, notwithstanding the flat statement that the object of the offered proof was to show reliance. The defendants must now accept the record in the situation in which the trial court, at their instance, specifically left it, namely, that reliance "is assumed."

It is finally argued that the original assignment of the

mortgage from Windsor to the corporation was a voluntary assignment and without consideration and that it is void as in fraud of creditors. The consideration was the issue of the corporate stock, all of which, with the exception of the qualifying shares, went to Windsor, whose ownership and holding of that stock was charged in defendant's answer and cannot now well be denied. We find no evidence that Windsor was thereby rendered insolvent or that the transaction was with fraudulent intent. Under the circumstances the value of the stock was, at the time, of the same approximate value as the property conveyed in exchange. The assignment was neither without consideration nor was it in fraud of creditors.

The assignment of the retained percentage is in a position even less advantageous to the appellants than is that of the mortgage and calls for no additional comment.

For the reasons above given the decree below will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ.   13.

*For reversal*—DILL, J.   1.