SHANNON (KEENAN v.). See Case No. 7,-640.

SHANNON (SAWYER v.). See Case No. 12,-405.

SHANTZ (STUART v.). See Case No. 13,556.

## Case No. 12,707.

### SHAPLEY v. RANGELEY.

[1 Woodb. & M. 213.] [2]

Circuit Court, D. Maine. May Term, 1846.

EQUITY—ADEQUATE REMEDY AT LAW—DISCOVERY —TO QUIET TITLE—MORTGAGES—ENTRY —RIGHT TO REDEEM.

1. This court will not interfere in equity, in a case where the parties appear to have a full remedy for their rights at law.

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

2. When a disclosure is sought here, and has been obtained, the party may then resort to a proceeding at law, if an ample one exists.

3. A bill of peace does not generally lie here in respect to land, unless the complainant is or has been in possession, or there is a defect in some deed, asked to be given up.

4. An entry on one piece of land to foreclose a mortgage covering several pieces in the same county and town, and in possession of the same person, is good for all.

5. A party, claiming an interest in land, who sees it conveyed to others without objecting, or giving notice of his own claim, is usually estopped from afterwards setting it up as against that conveyance.

6. Where A mortgages to B, and before the foreclosure takes effect, B agrees to receive the money at a certain day after the time of foreclosure expires, and does do it, and then by direction of A transfers his right to C, who had advanced most of the money for A, it was held, that this was not to be considered a payment and discharge of the mortgage, but a conveyance of the land after foreclosure to C. And though C, therefore, gave a writing in a few days to A to convey to him on the payment of what had been advanced by C with interest, this did not make C's title that of a mortgagee. So that it could not be extended on by his creditors; though C, on a tender to him of what was due by A, would be held strictly to a specific performance of his contract, if no rights of third persons had intervened; and might in equity be considered as holding in trust or mortgage for A, should he choose to claim it.

[Cited in brief in Newberry v. Detroit & L. S. Iron Co., 17 Mich. 157.]

7. A person, who had a subsequent deed of the separate piece of land, and assisted in the entry by B, and in the conveyance by B to C, without giving notice of his claim, and who has paid, or tendered nothing to B or C, is not entitled to redeem, or to pay the money named in C's contract with A, and have a release of the premises.

[Cited in Baldwin v. Howell, 45 N. J. Eq. 532, 15 Atl. 241.]

This was a bill in equity [by John R. Shapley against James Rangeley]. Among other things it alleged, that John Spring and Olive Spring, his wife, on the 4th of January, 1830, mortgaged to the president, directors, and company, of the Saco Bank, the mansion-house of said Spring, and several lots of land adjoining, and a three acre piece, being the same bargained to Thomas Gerrish. The object was to secure a note from Spring, to said corporation, of the same date for $6000, payable in two years with interest. The bill further averred, that on the 14th of April, 1832, Spring conveyed to Ether Shepley his right to redeem said three acre piece, and which right on the 5th of April, 1843, said Ether conveyed to the complainant. It was then alleged, that the bank on the 9th of May or June, 1833, through said Ether Shepley, their attorney, entered the mansion-house of Spring, to foreclose said mortgage, but did not go upon the three acre piece, which was near in the same town, but separate; and leaving said Spring still in possession of all the mortgaged premises. It was next alleged, that the bank, on the 30th of September, 1833, conveyed all its property in trust to Jona.

King, George Thatcher, and Samuel Hartley, and on the last day for the redemption of the mortgaged premises, said Spring applied to King, the business member of the trustees, and offered to settle the amount due. But as most of the payment was proposed to be made by a check drawn on the Manufacturers' and Traders' Bank in Portland by David Webster, payable at a future day, it was arranged to postpone the completion of the business till that day; when the check being paid, and the balance in money, the notes and mortgage deed were the next day given up to Spring, and a release executed to said Webster, the drawer of the check, of all the premises and the rights of the Saco Bank therein. This was done at the request of Spring, and through his agency, in the absence of Webster; and the deed was drawn by said Ether Shepley, and acknowledged before him. It was further averred, that Webster, on the 18th of April, 1838, conveyed his interest in the premises to one Daniel Burnham, and he conveyed the same to Rangeley, the respondent. That Rangeley had also, on the 9th of July, 1839, extended an execution on the same for a judgment recovered by him against Webster; that the mortgaged premises, independent of the three acre piece, were worth more than the money due Webster for his advances; and after asking a disclosure on certain points, the bill prays that the three acre piece "stand discharged, redeemed, and relieved free of, and from said mortgage, and that the levy of said Rangeley on the same, may be declared to be inoperative in law, and that Rangeley may be required to release all right to your orator to said three acres, or be perpetually enjoined from selling the same to the injury of the title of your orator." The answer of Rangeley admitted most of the facts averred, and, among other things, the continued occupation of all the premises by Spring to this time; but denied that without the three acre piece, their value was sufficient to pay the amount due to Webster from Spring, and averred that the title in the whole passed to Webster from the Saco Bank, and had been attached by Rangeley in his suit against Webster, before Webster conveyed to Burnham, and was now by his extent vested absolutely in himself, Rangeley. It is not deemed important here to notice the other pleadings or the evidence in the case; but they will hereafter be referred to when material to the points on which the bill is disposed of. [See Case No. 12,756.]

George F. Shapley, for complainant.
Charles Davis and Son, for respondent.

WOODBURY, Circuit Justice. Several of the facts in this case, which are sufficient to dispose of it, seem but little controverted; and the chief difficulty is in respect to the law. The original owner of the mortgaged premises appears never to have been ejected from them; and in a suit at law against him by the complainant to recover the three acre piece, which is now in contest, his rights, if any, as against the complainant, can be fully settled; and in a like manner can those of Rangeley be, should he ever obtain possession under the suit which, by his answer it seems, he has already commenced against Spring. Why should this court then interfere, when the rights of the parties can fully be adjusted at law? Calverley v. Williams, 1 Ves. Jr. 210, 213. No mistake is averred, nor any fraud, nor misrepresentation on the part of the respondent. It is true, that a disclosure has been asked on certain points; but this has been obtained; and hence, so far as the bill may be regarded as brought for discovery, its purpose has already been answered. Nor is it here a good ground for application to us, that the complainant fears, quia timet, being disturbed by the respondent, and hence brings a bill of peace. He must first have been in possession, or have shown a better title than the respondent, or a defect in some deed asked to be given up, in order generally to justify such an application. Story, Eq. Jur. § 703 et seq.; Hamilton v. Cummings, 1 Johns. Ch. 517, 523; Devonsher v. Newenham, 2 Schoales & L. 199, 208. But considering this doubtful, were we to go at length into the other prayers of the bill, it would be difficult to find sufficient ground for granting them in any equities of the case, that are clearly established. The original mortgage to the bank embraced the three acre piece as a part of its security. The entry to foreclose, by the agent of the bank, was evidently intended to cover that piece, as well as the rest of the mortgaged premises. According to several cases, such an entry on one piece is good for all in possession of the party within the same county whenever it is so intended. Co. Litt. 253a; Green v. Liter, 8 Cranch [12 U. S.] 229, 250; Stearns. Real Act. 45; Thayer v. Smith. 17 Mass. 429, 431. It was treated like the rest in the subsequent deed of it with the rest to Webster. And it would not answer in equity to let the complainant, who stands in Ether Shepley's shoes, as his grantee, and by agreement seeks no greater rights than his grantor would have, or stands open to all the equities and law, that exist against Ether Shepley, set up in behalf of himself, that his entry for the whole, as agent for the bank, and his writing a deed for the whole to Webster, and taking the acknowledgment of it for the whole, ought now to be considered as operative only for a part. If parties, claiming an interest in lands, look on and see it conveyed, or take part in the transaction without complaint or objection, they are usually estopped in equity from afterwards setting up a title against the grantees and those holding under them. This rule rests rather on the tendency of such conduct to mislead, than on any deceit actually intended, or actually practised in each case. 1 Story. Eq. Jur. § 385: Hatch v. Kimball, 16 Me. 146; The Sarah Ann [Case No. 12,342];

2 Cow. 246. The rule is similar now at law in sales of personal property. 1 Story, Eq. Jur. § 385. See a strong case in Thompson v. Sanborn, 11 N. H. 201, and cases there cited; 2 Kent, Comm. 483, note ("qui tacet, consentire videtur"); 1 Johns. Ch. 354; 12 Ves. 85; and other cases cited in Kent, Comm.

In the present instance no design whatever appears to have existed to defraud, but the omission to set up a claim to the three acre piece, or give notice of an hostile interest in it, arose probably from forgetfulness. If we look into the general features of the transaction, independent of this objection, the equities of the case favor the title of the respondent rather than the complainant. Provided no decisive principle stands in the way, it is manifestly proper, that the conveyance by the bank to Webster should be construed according to the real intent of the parties in interest in making it. Wade v. Howard, 11 Pick. 289. The trustees of the bank evidently knew that Spring understood and expected that the mortgage should not be considered as foreclosed, so as to prevent him from obtaining the premises from the bank on paying the amount due at the time the check became payable. And on the other hand, the trustees were willing to accede to this, so far as they might, without relinquishing any advantage and security for their debt, which they had obtained. In order to accomplish safely both of these ends, the parties might be considered as agreeing in substance to the foreclosure of the mortgage, for the stronger security of the bank, because actual payment had not been made; but at the same time agreeing further to a conveyance of the premises to Spring or any of his creditors, who might complete the payment of the mortgaged debt as soon as the check should fall due. It would be unjust to treat the transaction as a payment and a mere discharge of the mortgage. Willard v. Harvey, 5 N. H. 252. Because that would strip Webster, who advanced most of the money of all security for it; and it would do this also against the clear intent of Spring, the mortgagor, who not only procured a conveyance of the premises to be made to Webster by the bank, which is inconsistent with an intent merely to discharge the mortgage, but took back a writing from Webster, stipulating to permit Spring to pay him the sum advanced at any time within three years: and then to receive back a conveyance of the premises. All this shows explicitly Spring's intention not to have the money paid to the bank applied simply to discharge the mortgage, but rather to have the bank's title under it conveyed to some third person. See on this Pow. Mortg. 1088: 2 Cow. 248; Gleason v. Dyke, 22 Pick. 390; Smith v. Moore. 11 N. H. 55, 62, and cases there cited; 5 N. H. 252, 430.

Under these views, it is quite clear, that the parties must in equity be regarded as intending to have an absolute estate exist in the bank, but under a stipulation that it should be conveyed to Spring or his appointee, at the time the check became payable, if the money was then paid; that such an estate was conveyed to Webster by the bank, he being properly selected by Spring to receive the conveyance on account of his having advanced most of the money, and that Webster thenceforward held an absolute estate, and not an assignment merely of a mortgage. James v. Johnson, 6 John. Ch. 417. It was not an assignment of the mortgage merely, for other reasons, because it had become foreclosed, and must be so considered in order to enforce the views of the parties, and the equities of the case. Nor does it purport to be a mere assignment, as the note and mortgage deed were given up to Spring rather than transferred to Webster,—he getting a conveyance of the premises only. Had he been a mere assignee of the mortgage, the respondent's extent on his interest would probably be irregular and invalid, and hence of no avail. Blanchard v. Colburn, 16 Mass. 345; Eaton v. Whiting, 3 Pick. 484. So if Webster's writing executed to Spring could have converted the title he acquired into a mortgage, no legal interest, that could be extended on, remained in him. But Webster's writing to Spring was not sealed, nor given the same day with the deed; nor was it an agreement between the parties to the deed. And this would prevent it from being what it otherwise might be, a defeasance, and the deed coupled with it a mortgage on its face. Wendell v. New Hampshire Bank, 9 N. H. 404. It is clear, that, but for the circumstance of the writing not being between the grantor and grantee in the deed, it might be held in chancery, if Webster could sue Spring for the money, that such writing converted the deed into a mortgage. 6 Johns. Ch. 417; James v. Morey, 2 Cow. 246; Flagg v. Mann [Case No. 4,847]; 4 Kent, Comm. 141; 2 Story, Eq. Jur. § 1020; Porter v. Nelson. 4 N. H. 130; Dey v. Dunham. 2 Johns. Ch. 182, 15 Johns. 555. Possibly Spring, if he choose, might in chancery have the land charged with a trust or mortgage. before any third person had bought or levied on the premises without notice of Spring's claims. But as to such third person's levying on it, or purchasing as here, without notice, the title of Webster must be deemed an absolute one; and although the court would go far, when the rights of no third persons had intervened, to enforce a specific performance of this contract, if not to charge the land with it in trust or mortgage in case of seasonable payment by Spring or his assignee, and application for that purpose, yet this does not change the interest that passed from the bank. In Rangely v. Spring, 21 Me. 130, 137, it seems to have been settled, on a state of facts much as in this case, that a freehold estate at least has vested in Rangeley.

These conclusions seem well to protect every interest, that has been concerned in the transaction, whether in lending or borrowing; and do not affect unfavorably, in an equitable view, any subsequent purchasers from Spring, like Shapley. of the three acre lot. Shapley has

paid nothing since to entitle him to any new position, coming in, as he did, originally after the bank, and therefore should so come now. Nobody else has paid any thing in his behalf with a view to give him a new or better position. On the contrary, he has looked on in silence, and seen others perfect their prior rights; nor have they as yet, it is supposed, realized any thing beyond the prior debts from all the mortgaged premises. And if the evidence were less doubtful as to the value of the whole compared with the whole debt, it does not, after a foreclosure, authorize us to recal a part of the premises as in this bill is prayed, nor to re-open the right to redeem in behalf of him, when this is not prayed for. But the proper course for the complainant, if the whole mortgaged premises near the time of the foreclosure were worth more than the debt, was to have gone forward and paid it, and got an assignment of the whole before the time expired. That would have vested an absolute estate in him of the three acre piece, if Mrs. Spring be not interested in it, and Spring could not have redeemed the rest of him without paying the whole debt. Saunders v. Frost, 5 Pick. 259. But on the case, as it now stands, we see no equity that requires us to interfere. More especially is this the case if Mrs. Spring did not join in the deed to him, provided she is interested in the three acre lot. But her rights we do not examine, as it does not become necessary for a just disposal of the case.

Bill dismissed, with costs.