Baldwin v. Howell.

JOHN BALDWIN

v.

ISAAC L. HOWELL et al.

1. If the administrator of the assignee of a mortgage place it in the hands of his attorney, who makes an unauthorized use of it, by allowing the mortgagor, or a stranger to the record, to procure its cancellation, so as to let in and to give priority to another mortgage held by a third person, after all which another mortgage is executed and recorded in the stead of the one so canceled, such administrator is not estopped by those unauthorized acts, at the hands of a subsequent purchaser under a decree on the mortgage so made prior as aforesaid, when the facts respecting such unauthorized acts were not known to the purchaser until after his purchase.

2. If, in such case, said administrator be made a party to proceedings to foreclose the said first mortgage, and a solicitor, of whom the administrator

Baldwin *v.* Howell.

has never heard, acknowledges service of process, and presents the said substituted mortgage before the master, and has it reported on at the instance of the attorney to whom the original mortgage was first given, and who consented to its cancellation, and the said solicitor afterwards, and on the day when the mortgaged premises are advertised for sale, under a decree in that cause, notifies the said administrator, for the first time and by telegraph, of the sale, and asks him to meet him at the place of sale, which he does, remaining at or near by where the officer is conducting the sale, and knowing that it is in progress, without at any time making known any objections to the sale to any one except to said solicitor, he cannot afterwards present his objections, when the officer's deed has been delivered and the purchaser has paid his money in good faith.

3. The clerk is not authorized to cancel a mortgage at the simple request of a stranger, though the seals be off.

4. The purchaser at a foreclosure sale takes the title which the mortgagee had under which the proceedings were instituted.

On bill, answer and proofs.

*Mr. William H. Morrow* and *Mr. Herbert Gedney*, of Goshen, New York, for the complainant.

*Mr. Henry S. Harris* and *Mr. J. M. Roseberry*, for the defendants.

NOTE.—The recording of a deed is only a ministerial act, even when required by statute to be done by a court, *McIvers* v. *Robertson, 3 Yerg. 83 ; Dawson* v. *Thurston, 2 Hen. & M. 132 ; Elliott* v. *Peirsol, 1 Pet. 328, 341; Paul* v. *Baugh ( Va.), 9 S. E. Rep. 329;* see *Curtis* v. *Sacramento, 13 Cal. 290; Eggleston* v. *City Council, 1 Mills (S. C.) 45; People* v. *Fletcher, 3 Ill. 482 ;* or the canceling of a mortgage, *Fleming* v. *Parry, 24 Pa. St. 47; Brown* v. *Henry, 106 Pa. St. 262;* and the recording of a deed may be enforced, in a proper case, by *mandamus, Rex* v. *Derbyshire, 1 W. Bl. 606;· Reg.* v. *Middlesex, 7 Q. B. 156; Strong's Case, Kirby 345; People* v. *Collins, 7 Johns. 549; Ex parte Goodell, 14 Johns. 325; Dawson* v. *Thurston, 2 Hen. & M. 132; Manns* v. *Givens, 7 Leigh 689;* see *Austin* v. *Register &c., 41 Mich. 723; Reg.* v. *Middlesex, 1 E. & E. 322; Reg.* v. *O'Meara, 15 U. C. Q. B. 201;* or the canceling of a mortgage given to three executors, at the request of one of them, *People* v. *Miner, 37 Barb. 466;* see *Lanaux* v. *Recorder, 36 La. Ann. 974; People* v. *Miller, 43 Hun 463; Maspereau* v. *Batt, 40 La. Ann. 582; Ex parte Stanford, 1 Q. B. 386; Stanley* v. *Valentine, 79 Ill. 544; Renfro* v. *Adams, 62 Ala. 302;* but not to the injury of other encumbrancers, who should be notified of the application, *Slocomb* v. *Rogillio, 30 La. Ann. 833.*

The clerk and his sureties are liable to a grantor or grantee for a mistake in

Baldwin v. Howell.

Bird, V. C.

This bill is filed to foreclose a mortgage. The mortgagor, David K. Howell, resided in this State, and was the owner of two farms, one containing one hundred and five acres, called the Frelinghuysen farm, and one of one hundred and two acres, called the Hope farm. He gave a first mortgage on these farms to Albert Wells, who then resided in the county of Orange, in the State of New York, for $4,500. The mortgage was prepared and the execution of it witnessed by John E. Howell, who afterwards proved its execution before David F. Gedney, county judge of Orange county, New York. David K. Howell, the mortgagor, has since died. The title to the property has passed into other hands, who claim a right to resist the foreclosure of this mortgage under the circumstances of the case, which will hereafter appear.

In the first place, it is insisted that this mortgage, which appears to have been recorded on the 23d day of February, 1867, in the county of Warren (the county where the lands therein described are situated), was not so proved as to bring it within the law admitting mortgages to be so recorded, and consequently

recording, *Nattinger* v. *Ware, 41 Ill. 245; State* v. *Davis, 96 Ind. 539;* see *Lewis* v. *Hinman, 56 Conn. 55; Planters Bank* v. *Conger, 12 Sm. & M. 527;* and to a mortgagor, *Lowry* v. *Smith, 97 Ind. 466;* or to a mortgagee, *Terrell* v. *Andrew Co., 44 Mo. 309; Simonson* v. *Falihee, 25 Hun 570; Succession of Falconer, 4 Rob. (La.) 5; Swan* v. *Vogel, 31 La. Ann. 38; Tousley* v. *Tousley, 5 Ohio St. 78; Wood's Appeal, 82 Pa. St. 116;* see *Parsons* v. *Lent, 7 Stew. Eq. 67, 70; Gilchrist* v. *Gough, 63 Ind. 576;* or to an assignee, *Redford* v. *Tupper, 30 Hun 174.*

*Aliter,* where the recorder's act is caused by the grantee's own fraud or fault, *Lawton* v. *Gordon, 37 Cal. 202; Hartmyer* v. *Gates, 1 Root 61; Kiser* v. *Heuston, 38 Ill. 252; Worcester National Bank* v. *Cheeney, 87 Ill. 602; Haworth* v. *Taylor, 108 Ill. 275; Yerger* v. *Barz, 56 Iowa 77; Martin* v. *Landreaux, 33 La. Ann. 676; Town* v. *Griffith, 17 N. H. 163; City Council* v. *Ryan, 22 S. C. 339; Hickman* v. *Perrin, 6 Coldw. 135; Johnson* v. *Burden, 40 Vt. 567;* see *Van Schaick* v. *Sigel, 9 Daly 383; Alexander* v. *Smith, 2 Duv. 518; Brigham* v. *Brown, 44 Mich. 59;* or the fraud of his agent, *Nixon* v. *Hamilton, 2 Dr. & Wal. 364; Musser* v. *Hyde, 2 W. & S. 314;* see *Peabody Building Association* v. *Housman, 89 Pa. St. 261; Mitchell* v. *Aten, 37 Kan. 33; Swift* v. *Hall, 23 Wis. 532; Brown* v. *Henry, 106 Pa. St. 262.*

And where the grantor is also the recorder, see *Sawyer* v. *Adams, 8 Vt. 172* (doubted in *Spear* v. *Birchard, U. S. C. C., Roberts Vt. Dig. 231, ¿ 52); Mer-*

Baldwin *v.* Howell.

the record thereof is of no binding force. The insistment is, that the proof, made before the said David F. Gedney, was not according to the provisions of the law in this State. This question is one of considerable difficulty; but, nevertheless, I think, when the provisions of the act of March 1st, 1859, found in *Nix. Dig. 157* § *72;* of March 4th, 1863, found in *Nix. Dig. 159* § *80;* and of the 27th of February, 1868, *Nix. Dig. 159* § *54,* are considered, and their object properly regarded, together with the act of April 14th, 1876, *Rev. 1280* § *5,* it will be concluded that the proof is sufficient, and that the mortgage in question was properly recorded, and that the complainant can claim the benefit of the notice thereby contemplated.

The next important question to be decided is, whether these words,

"The mortgage, of which this is a copy, was presented to me this day with seals torn off, and with the desire that the same should be canceled of record. I do therefore, this twentieth day of July, A. D. 1872, cancel the same.—SIMERSON, *Clerk*."

found in the margin of the record of said mortgage, is valid and effectual in the law as a compliance with the statute in such

*rill* v. *Dawson, 1 Hempst. 563; Mundee* v. *Freeman (Fla.), 3 South. Rep. 153;* or the grantee, *Paul* v. *Baugh (Va.), 9 S. E. Rep. 329;* or one of the mortgagees, *Shepherd* v. *Burkhalter, 13 Ga. 443.*

The clerk is liable to creditors or *bona fide* purchasers for neglecting to record a duly lodged deed of the premises, *Merrick* v. *Wallace, 19 Ill. 486; Lee* v. *Bermingham, 30 Kan. 312; Bank of Kentucky* v. *Haggin, 1 A. K. Marsh. 306; Throckmorton* v. *Price, 28 Tex. 605; Polk* v. *Cosgrove, 4 Biss. 437; Riggs* v. *Boylan, 4 Biss. 445; Perot* v. *Chambers, 2 La. Ann. 800; Payne* v. *Pavey, 29 La. Ann. 116; Beverly* v. *Ellis, 1 Rand. 102; Swepson* v. *Bank, 9 Lea 713;* or to index it, when such indexing is required by statute, *Barney* v. *Little, 15 Iowa 527; Reeder* v. *State, 98 Ind. 114; Green* v. *Garrington, 16 Ohio St. 548 (91 Am. Dec. 103, 109); Dodge* v. *Potter, 18 Barb. 193; Board of Commissioners* v. *Babcock, 5 Oreg. 472; Hunter* v. *Windsor, 24 Vt. 327; Curtis* v. *Lyman, 24 Vt. 338; Barrett* v. *Prentiss, 57 Vt. 297;* see *2 Pom. Eq. Jur. § 653; Crosby* v. *Vleet, 3 N. J. L. J. 86; Schell* v. *Stein, 76 Pa. St. 398; Pringle* v. *Dunn, 37 Wis. 449; Smith* v. *Waggoner, 50 Wis. 155; Turner* v. *McFee, 61 Ala. 468; Stockwell* v. *McHenry, 107 Pa. St. 237; American Emigrant Co.* v. *Call, 22 Fed. Rep. 765.*

It has been held, where there were several mortgagees, that the loss consequent upon the register's failure to record the first mortgage correctly fell upon the first mortgagee and not upon the junior encumbrancers of the premises,

cases made and provided. And, if not so effectual, the further question arises, whether the complainant is estopped from denying their validity by his acquiescence or his laches. These general propositions suggest another in the light of the evidence in this case, namely, did the defendants rely on the alleged cancellation solely, or upon something else which was said or done by the complainant at the time of their purchase or afterwards?

On the 1st day of February, 1867, the said David K. Howell, the owner of the land in question, made this mortgage to Albert Wells, to secure $4,500, payable in the year 1872, with interest at the rate of seven per cent. It was recorded on the 23d day of February, 1867. In the year 1868 Albert Wells, to whom the said mortgage was made, assigned it to George Nyce. Nyce died in the year 1870, intestate, having assets in Orange county, in the State of New York, and in Pike county, in the State of Pennsylvania. John Baldwin, the present complainant, living in Pike county, procured letters of administration, and proceeded to administer upon the assets in the State of Pennsylvania. It became necessary for him, in order to control the assets in the State of New York, to have letters of administration issued to

*Noyes* v. *Horr, 13 Iowa 570;* and so as to subsequent *bona fide* purchasers, *Miller* v. *Bradford, 12 Iowa 14; Frost* v. *Beekman, 1 Johns. Ch. 288, 18 Johns. 544; Chamberlain* v. *Bell, 7 Cal. 292; Lally* v. *Holland, 1 Swan 396; Sanger* v. *Craigue, 10 Vt. 555; Disque* v. *Wright, 49 Iowa 538; Hill* v. *McNichol, 76 Me. 314; Barnard* v. *Campau, 29 Mich. 162;* but see *Case* v. *Hargadine, 43 Ark. 144; Brydon* v. *Campbell, 40 Md. 331; Mangold* v. *Barlow, 61 Miss. 593; Glading* v. *Frick, 88 Pa. St. 460; Clader* v. *Thomas, 89 Pa. St. 343;* or judgment creditors, *Shepherd* v. *Burkhalter, 13 Ga. 443; Smith* v. *Jordan, 25 Ga. 687; Andrews* v. *Matthews, 59 Ga. 466;* see *Piper* v. *Hilliard, 58 N. H. 198.*

The register is liable in damages for negligence in omitting an encumbrance from his certificate of search, *Smith* v. *Holmes, 54 Mich. 104; McCaraher* v. *Commonwealth, 5 Watts & S. 21; Peabody Building Association* v. *Housman, 89 Pa. St. 261; Van Schaick* v. *Sigel, 58 How. Pr. 211, 60 How. Pr. 122, 9 Daly 383; Piatt* v. *St. Clair, Wright (Ohio) 526; Harrison* v. *Brega, 20 U. C. Q. B. 324.*

The plaintiff must, of course, prove the extent of his damage, *State* v. *Atkisson, 17 Ind. 26; State* v. *Davis (Ind.), 20 N. E. Rep. 159; Kimball* v. *Connolly, 3 Keyes 57; Sinclair* v. *Slawson, 44 Mich. 123; Bishop* v. *Schneider, 46 Mo. 472;* and what is sufficient proof of the recorder's liability, see *Barnes* v. *Smith, 3 Humph. 82; Smith* v. *Holmes, 54 Mich. 104; Hunter* v. *Windsor, 24*

him there, in order to do which he was obliged to procure sureties, residing in that State, to go upon his bond. For aid in that direction and for legal advice, he applied to one Edwin A. Van Sikle, an attorney-at-law, residing at Goshen, in Orange county. John Baldwin, being a stranger in Orange county, Van Sikle undertook to procure bondsmen for him, and did so, upon the understanding that the assets of George Nyce in that county should be placed in the possession of the bondsmen for their protection until the final settlement of the estate. Van Sikle's father and uncle became such bondsmen, and to them such assets were all delivered for the purposes indicated.

At the time of the delivery of them to his bondsmen, it was agreed that they should be placed in the safe of Edwin A. Van Sikle, Baldwin's attorney, for safe keeping, so that while they were, in contemplation of the agreement between the parties, in the legal custody of the bondsmen, they were actually in the possession and under the control of Van Sikle.

The whole value of the assets was about $16,000. This seems to be the limit of the authority of Van Sikle. There is nothing to show that he had any other right than to keep safely

.Vt. 327; Dubose v. Young, 10 Ala. 365; Vandercook v. Baker, 48 Iowa 199; Horton v. Cutler, 28 La. Ann. 331.

It has been held that the recorder's knowledge that a receipt for money due on a mortgage which he recorded was forged, must be proved, Ramsey v. Riley, 13 Ohio 157; see Lancaster v. Smith, 67 Pa. St. 428; or that he knew his certificate of search was fraudulent, Wood v. Ruland, 10 Mo. 143; or that he contracted to examine the records and give a correct certificate, Mechanics Building Association v. Whitacre, 92 Ind. 547; or that he designedly misled the plaintiff's attorney by verbal misrepresentations as to the record, Reeder v. Harlan, 98 Ind. 114; see Shepherd v. Burkhalter, 13 Ga. 443; Throckmorton v. Price, 28 Tex. 605; Lyman v. Edgerton, 29 Vt. 305; Lawton v. Gordon, 37 Cal. 202; or that he fraudulently delivered a mortgage to the mortgagor before recording it, Welles v. Hutchinson, 2 Root 85.

A register may be indicted for knowingly issuing a false certificate, State v. Leach, 60 Me. 58.

The register is not liable to third persons, alleged to have been injured by his negligence in making and certifying a search, where he had no direct connection with them in the matter, Day v. Reynolds, 23 Hun 131; Jennings v. Wood, 20 Ohio 261; Houseman v. Girard Association, 81 Pa. St. 252; Commonwealth v. Harmer, 6 Phila. 90, 14 Am. Law Reg. 214; Lyman v. Edgerton,

Baldwin v. Howell.

these assets as a protection for the bondsmen against all loss by the default of Baldwin as administrator.

Very soon after this transaction, in the month of February, 1872, David K. Howell, the mortgagor, became anxious to secure further loans upon his said two farms, and for that purpose made application to the Mutual Life Insurance Company of New York for a loan of $10,000. It was discovered, of course, that this Albert Wells mortgage of $4,500 was upon the property, and also that there were two other mortgages, one to John A. Miller, dated March 20th, 1868, for $5,000, including both farms, and one to McKane, dated March 25th, 1870, for $5,000. The Wells mortgage, being the one now in dispute, was certainly a first lien on the land now sought to be sold, if not also on the tract covered by the other two mortgages. Whether it was prior on the other tract or not, with respect to all liens, does not satisfactorily appear. All of these encumbrances the insurance company required to be canceled before it would make any loan.

The chief actor in procuring this loan and the pretended cancellation of these mortgages was John E. Howell. It appears that he was no relation of David K. Howell, who had given said

---

29 Vt. 305; see National Savings Bank v. Ward, 100 U. S. 195; Ware v. Brown, 2 Bond 267; Travelers Insurance Co. v. Harris, 89 Ind. 363; Raynsford v. Phelps, 43 Mich. 342; Siewers v. Commonwealth, 6 W. N. C. (Pa.) 17; and a deputy is liable only to the recorder himself, Snedicor v. Davis, 17 Ala. 472; McNutt v. Livingston, 7 Sm. & Marsh. 641; see Maley v. Tipton, 2 Head 403.

The recorder's cancellation of a mortgage on the record, without the knowledge or assent of the mortgagee, will not bind him, and he may enforce it against even a bona fide purchaser of the premises without notice, Jones on Mort. § 966; Chige. v. Landreaux, 2 La. Ann. 606; De St. Romes v. Blanc, 20 La. Ann. 424; Fleming v. Parry, 24 Pa. St. 47; Lancaster v. Smith, 67 Pa. St. 427; see City Council v. Ryan, 22 S. C. 339.

The sureties of a recorder are liable, on their bond, for his mistakes in recording, or in certificates of searches, or in canceling the record of liens, Appleby v. State, 16 Vr. 161; Lusk v. Carlin, 5 Ill. 395; McCaraher v. Commonwealth, 5 Watts & S. 21; Ziegler v. Commonwealth, 12 Pa. St. 227.

Whether the statute of limitations applies to an action for such negligence, and when it begins to run, see Howell v. Young, 5 B. & C. 259; Snedicor v. Davis, 17 Ala. 472; Owen v. Western Savings Fund, 97 Pa. St. 47; Northrop v. Hill, 61 Barb. 136, 57 N. Y. 351; Fox v. Thibault, 33 La. Ann. 32; Lee v. Peachy, 3 Call 220; Harrison v. Brega, 20 U. C. Q. B. 324.—Rep.

mortgages.   This John E. Howell had secured the loan of the
$4,500, on the mortgage now in suit, from Albert Wells.
Beyond all question, he knew of the arrangement between John
Baldwin, as administrator of George Nyce, deceased, and Edwin
A. Van Sikle, Baldwin's attorney, and also of the arrangement
between Baldwin and his sureties as to the manner in which they
were to be protected.   About the 1st day of April, 1872, this
John E. Howell, in order to assist the said David K. Howell in
carrying out his purpose to secure a first lien on one·of said
farms for $4,000 to the insurance company, and on the other for
$6,000, had the said David K. Howell execute a mortgage to
said insurance company, on the farm now in question for $4,500,
which was afterwards on the        day of March, of the same
year, recorded.   At the time of the recording of this mortgage,
as will be observed, all the mortgages above named were uncan-
celed, and so remained until the 20th day of July, 1872.

Before this, however, and in the month of February in that
year, this John E. Howell procured to be executed, by said David
K. Howell, a mortgage on the Hope farm, as it is called, being
one of the farms mentioned in the complainant's mortgage, for
$6,000, made to secure a bond given to the said insurance com-
pany, and also another mortgage upon the other, the Freling-
huysen farm, made to the same company, to secure a bond for
$4,000.   Both of these mortgages were recorded in the month
of March, 1872, as the mortgage in question was sent to the
clerk's office by the said John E. Howell for cancellation in July
following.   After such cancellation it is in evidence that the said
company advanced the sum of $10,000 to the said David K.
Howell.   What became of that money does not appear.   There
is not the slightest pretence that any of it was applied, in any
way, to the benefit of the estate of George Nyce, deceased.

It should be noted that the mortgage, which was so given by
the said David K. Howell, about April 1st, 1872, and which was
intended to operate as a substitute for the original Alfred Wells
mortgage, included the said Frelinghuysen farm, and also pre-
tended to include forty acres of other land, which, as will here-
after appear, was said to be valuable timber-land.   But the

truth seems to be, if there be any such forty acres, it has never yet been discovered.

At the time of these transactions between the Howells and Van Sikle, and the insurance company, Van Sikle and John E. Howell resided at Goshen, in the county of Orange, in the State of New York, and John Baldwin, the present complainant, resided in Pike county, Pennsylvania. There is no evidence to satisfy me, in the slightest degree, that Baldwin had any knowledge of these transactions, at the time of their completion. The testimony leads me to the conviction that he was wholly ignorant of what had been done, until a month afterwards. I am fully satisfied that when he first obtained any information respecting the subject-matter, he was not only not fully informed but was actually misled. He was misled by being informed by Van Sikle, his attorney, that, although the said mortgage was second in order of priority on the Frelinghuysen farm, it included forty acres of timber-land upon which it was a first lien, and which was worth at least $100 per acre, which made the security better than it was before. When Baldwin was first informed of any change he was in Goshen for the purpose of presenting his account to the proper tribunal with the view of making a settlement of the estate with which he was chargeable, and of transferring the balance remaining to the guardian of the next of kin of George Nyce, deceased. While there and when about to go from the office of Van Sikle, his attorney, to the place of hearing, the papers were produced by Van Sikle, when John Baldwin began to examine them and recognized that the mortgage given by David K. Howell to Wells, and by him assigned to Nyce, was not present with the other papers. He discovered, however, that there was an additional mortgage there made by the said David K. Howell to one *George* Baldwin (not the complainant, John Baldwin), which he had not before seen. John Baldwin immediately made inquiry respecting the absence of the one paper and the presence of this new one, a stranger to him, when one of the sureties spoke and said to Edwin A. Van Sikle, the attorney, that he had better explain that to Mr. Baldwin, at which time Van Sikle made a brief but, as the testimony shows,

an imperfect and unsatisfactory explanation of the subject. I am satisfied that Mr. Baldwin did not, in any sense, acquiesce at that time in what had been done; while it is also clear that he took no steps to undo what had been done, which perhaps was impossible, or to repair, as far as possible, the injury which was sure to come to the estate which he had the control of.

John Baldwin then was desirous of transferring these securities, in Orange county, to the guardian of the next of kin of George Nyce, deceased, but the guardian refused to take the mortgage which had been executed by Howell, by way of a substitution for the original Wells mortgage, to George Baldwin. Thus it appears that John Baldwin knew of the substitution of a mortgage in the name of George Baldwin for the original mortgage which he had inventoried as administrator in the name of Albert Wells, in the Fall of 1872 or Spring of 1873.

The next step has reference to the beginning of a foreclosure suit, upon this mortgage, in the name of George Baldwin. Without consulting John Baldwin, Edwin A. Van Sikle sent this mortgage to Anderson & Johnson, of Newton, directing them to proceed to collect the same by foreclosure proceedings. The bill was filed February 4th, 1874, a subpoena issued and returned served, without any other steps having been taken. Some months after these proceedings, John Baldwin was informed of them by Van Sikle.

There is nothing whatever in the case to show that John Baldwin had any other information with respect to this subject, or with respect to any proceedings taken upon any of the mortgages which had been given, until the 30th day of March, in the year 1876. On that day Mr. Anderson, of the law firm of Anderson & Johnson, of Newton, was on his way to Belvidere, in the county of Warren, to attend a sale of the Frelinghuysen farm, under an execution upon a decree out of the court of chancery, obtained in favor of the Mutual Life Insurance Company, upon its mortgage. When at Washington, in Warren county, Anderson telegraphed Baldwin at Stroudsburg, Pennsylvania, to meet him at Belvidere, informing him that a sale of this land was to take place there. And this, I believe, is the first knowledge that

Baldwin v. Howell.

Baldwin had of Mr. Anderson. Although Van Sikle had informed him that he had sent the George Baldwin mortgage to solicitors at Newton to be foreclosed, he did not make known to him who the solicitors were. Baldwin met Mr. Anderson at Belvidere in response to his telegram. Baldwin not only took no part in what took place that day at Belvidere, but "repudiated" the whole transaction; and, in my judgment, in no way directly committed himself by anything that he said or did. Mr. Anderson bid upon the property, but not at the request of Baldwin; nor does anything appear which would justify him in the belief that he had a right to bid for Baldwin. Whatever instructions he may have had from other sources before telegraphing Baldwin, it cannot be said that he could bind Baldwin by such instructions, when Baldwin, if bound at all by anything in the case, was present as the principal, prepared to speak and act for himself.

The premises in dispute were offered for sale that day; but an adjournment was made, resting on the bid of Mr. Anderson. Whether all the bidding was made in the presence of Baldwin or not is a disputed point, but, in the view which I take of the case, this branch of it is of no great importance. He admits that he was present in the room where he supposes the bidding took place, but says that he was outside of the building at the time the bidding was made, and at the time of the adjournment. He also says that he was informed of the bidding and of the adjournment. The adjournment was made on the bid of Mr. Anderson. At the expiration of the time fixed for the completion of the sale, Mr. Anderson and Isaac L. Howell were present. Baldwin was not there. It was arranged that Howell should accept the property at Anderson's bid, and it was accordingly struck off to him. The sheriff executed his deed to Howell.

About $30 were realized above the amount due to the insurance company, but there is no proof that any of it ever reached the hands of Baldwin.

At that time Baldwin had not seen this cancellation nor had he heard of it; nor did he know anything about it until the year 1882, when he procured a search of the title of the lands de-

34

scribed in the bill to be made. The bill on which the present suit rests was filed in October, 1886.

Thus, in brief, have I given the facts by which this case must be judged, independently of the question which arises from the alleged cancellation of the mortgage. It will be seen, that the loss to the estate which Baldwin represented was the whole amount due on the mortgage, no evidence being produced to show that he ever was paid one dollar.

Under these circumstances who shall suffer the loss? Shall the administrator of George Nyce, the present complainant, or Isaac L. Howell, the purchaser at the sale under the foreclosure of the mortgage given to the insurance company, or his grantee, one of the defendants, suffer this loss? On this branch of the case Baldwin and the purchaser cannot be said to stand on equal equities. In this particular, the purchaser has the advantage, in that he did nothing towards the surrender and cancellation of the Wells mortgage, while it was undoubtedly so surrendered and canceled by the aid and connivance of Baldwin's attorney, Edwin A. Van Sikle. By placing this mortgage in the hands of Van Sikle, he made it possible for him to commit such a fraud. It is true Baldwin did not trust Van Sikle, as his attorney, for any such purpose, but only as the simple custodian of the assets, for another particular object; but, nevertheless, by so doing, he gave him the power to use it as he did, and so, through the instrument which Baldwin had selected, this wrong was committed. There is nothing in the case to show that the purchaser had any knowledge of this wrong at the time he took his deed from the sheriff. See *Cooper* v. *Headly, 1 Beas. 48; Van Hook* v. *Somerville Manufacturing Co., 1 Hal. Ch. 633; Putnam* v. *Clark, 2 Stew. Eq. 412; Westervelt* v. *Scott, 3 Stock. 80; Harrison* v. *Johnson, 3 C. E. Gr. 420, 428, 430, 431.* Although this case was reversed, on appeal, to the extent here cited, it was not disturbed.

As I think Baldwin chargeable with the misconduct of Van Sikle, so also I am constrained to conclude that he is chargeable with negligence from and after the sale on the 30th day of March, 1876. On that day, and for several years thereafter, he acted like a man who felt that he was inextricably bound in toils

Baldwin v. Howell.

formed with his own consent, or who had such a total disregard of his interests and duties, as to be moved by no considerations to look after them, or even to inquire concerning them.

Passing by the preceding period, and taking it for granted that his confidence in Van Sikle was unshaken up to the time of the sale, how is it possible that he could rest in any sort of security after that sale? He knew that the Wells mortgage was a perfectly good one, and had been told by Van Sikle that, although he had surrendered that one, he had taken a better security instead, it being on a part of the same premises as the Wells mortgage and also on other lands. Now, when it is called to mind that, in about two years' time, Van Sikle told Baldwin that he had sent this last mortgage to solicitors to be foreclosed, which was all that he heard concerning it until March 30th, 1876, more than two years later, and then, when it is also considered that he was, on that day, summoned to attend a sale of the premises now in dispute, but not sold, in proceedings not instituted by himself or in his own name, but by the insurance company, by which he had been supplanted, and also the fact that the said premises were, on that day, bid up to only about $30 more than was due on the mortgage of the company—I say, with all these pertinent facts present before him, how was it possible for him to turn his back on Mr. Anderson, and all that was there transpiring, and which he could not but have understood involved the interests of the estate which he alone represented? And yet, he says, he "repudiated" the whole business. This repudiation shows that he had some comprehension of the situation, and must have been conscious of the fact that the interests of the estate were more or less in jeopardy. And to say otherwise would be little less than stultification. For, although he did not know why he was summoned there, and may never have heard of Anderson before, it cannot be believed that when he reached the place of sale he did not ascertain enough about the facts to fully understand that $4,500 of the Nyce estate were involved. If he had anything to repudiate, it was that interest and the facts which had arisen from time to time to make that branch of his trust most interesting. But, how did he repudiate this important matter? Giving to his statements under oath the

widest possible range, the only repudiation of what had been done, or was then being done, in or near to his presence, was made to Anderson only. The evidence does not show that he made any protest to any one else, on the day the land was first offered for sale, nor at any time afterwards.

Now, Mr. Anderson was there as his attorney, and he could not but have understood that as a fact, whether he saw fit to regard him as such in truth or not. He knew, too, that Anderson was there claiming to act in these matters in his behalf, and that the officer conducting the sale, and, no doubt, others also, so understood it. All these things appearing, how Baldwin repudiated what had been done and what was there being done, simply turning away from those who well knew that he was interested, I am unable to tell. But he suffered the week for which the sale stood adjourned, and also the period which elapsed before the deed was delivered, to pass without giving notice to any of the persons concerned that he had not lawfully been brought into court, or that Anderson was not authorized to act for him. He is estopped.

The cases sustain this view. *Philhower* v. *Todd, 3 Stock. 312.* In *Hopkins* v. *Chandler, 2 Harr. 299, 303,* the court said: "Where property seized by a sheriff is claimed by a stranger, if he stands by and permits it to be sold, he will not be entertained here upon an application to have the money." *Bordine* v. *Combs, 3 Gr. 412; Woodruff* v. *Morristown Institute, 7 Stew. Eq. 174; Mutual Life Ins. Co.* v. *Norris, 4 Stew. Eq. 583; Pickard* v. *Sears, 6 Ad. & El. 469; Chautauque Bank* v. *White, 6 Barb. 589, 604; Marshall* v. *Pierce, 12 N. H. 127, 133; 1 Story Eq. Jur. 385; Storrs* v. *Barker, 6 Johns. Ch. 166; Brothers* v. *Porter, 6 B. Mon. 106; Shapley* v. *Rangeley, 1 Woodb. & M. 213; Hatch* v. *Kimball, 16 Me. 146; Brig Sarah Ann, 2 Sumn. 206, 211, 212; Thompson* v. *Sanborn, 11 N. H. 201, 206; Kerr on Fraud 127; Bryan* v. *Ramirez, 8 Cal. 461 (68 Am. Dec. 342); Wendell* v. *Van Rensselaer, 1 Johns. Ch. 344; Moran* v. *Palmer, 13 Mich. 367.*

It would seem as though this ought to close the discussion, but the learned counsel for the complainant appeared so confident that Baldwin had been so deceived by Van Sikle, and was so kept in the dark by all concerned upon whom he had a right

Baldwin v. Howell.

to rely, and was in such a state of absolute surprise and confusion when he reached the place of sale, that he ought not to be subjected to the ordinary rules of estoppel, and that it may be I am required to carry the discussion to the point which is admitted to be of deep interest and of great public importance.

Hence, I am led to inquire whether the cancellation of the Wells mortgage made by the clerk, was authorized, and is a protection to the purchaser or not. At this stage of the dispute, there seems to be some ground on which to challenge the claims of the purchaser to a superior equity to the complainant. The many cases which are to be found in our reports, in which it appears that the aid of the courts has been invoked to set aside illegal cancellations, need only to be mentioned to show how important the question is.

Have the requirements of the statute been complied with? The language is:

"When any mortgage registered as aforesaid shall be redeemed, paid and discharged, it shall be the duty of the said clerk, on application to him, made by the mortgagor or the person redeeming, paying and discharging the said mortgage, and producing to him the said mortgage canceled, or a receipt thereon, signed by the mortgagee or his executors, administrators or assigns, to enter in a margin to be left for that purpose, opposite to the said abstract, a minute of the said redemption, payment and discharge; which minute shall be a full and complete bar to, and discharge of, the said entry, registry and mortgage." *Rev. 707 § 23.*

From this it will be seen that the mortgage must be paid, redeemed or discharged; that the application to have it canceled must be made to the clerk by the person redeeming, paying or discharging it, and that he must also produce the mortgage canceled, or with a receipt thereon, signed by the mortgagee, his executors, administrators or assigns.

In this case, as the record shows, the clerk certifies that when the mortgage was presented to him the seals were off. It may be that the removal of the seals from such an instrument is a cancellation, provided a cancellation be intended. I think that the act of tearing off the seals is an act within the common signification given to the word cancellation. When only that mode of showing that an instrument has been paid is used, the diffi-

culty in the proof of the intention to the clerk, so as to satisfy him that the act of tearing off the seals was the act of the mortgagee, is increased. That this is a serious difficulty, is made plain by the facts of this case, and the facts in the case of *Harrison* v. *Johnson, 3 C. E. Gr. 420,* and by the cases therein referred to, as well as by the case of *Harrison* v. *Johnson, on appeal, 4 C. E. Gr. 488.* But, whilst these cases make it so manifest that this branch of the Registry act shows a serious imperfection, or that under it most serious mischief may be done, however unintentional on the part of the officer, the danger in this direction is not so great as would at first appear, when all of the provisions of the act are considered. I think this can be demonstrated, in part at least, by the case now in hand.

Let us inquire. Was the simple fact that the mortgage came to the clerk with seals off sufficient evidence for him to act upon, in discharging the mortgage of record? I think not. There is nothing in the act to warrant any such conclusion. No possible construction of the section above quoted will bring the mind to such conclusion. The section expressly provides that the application to the clerk for the cancellation of the record must be made by the mortgagor, or person redeeming or discharging the mortgage. And such person must also produce the mortgage. In this case the testimony of the clerk establishes the fact that, on the day of the cancellation of this mortgage, he received a letter from the said John E. Howell including the mortgage in question and the two other mortgages which were the other liens, which the insurance company also desired to have removed. This letter contained a request from said John E. Howell, to the clerk, to cancel said mortgages. Now the testimony is most complete that said Howell had not the shadow of right to have the possession or control of said mortgage. He knew that it had been assigned to George Nyce by Alfred Wells. He knew that Nyce was dead and that Baldwin, this complainant, was the administrator of his estate. Nor did he produce to the clerk any authority from David K. Howell, the mortgagor, who alone, under the statute, had a right to present his mortgage and ask for its cancellation. John E. Howell was not the mortgagor,

nor the owner of the land, nor in any lawful position, to substitute one mortgage for the other, and then ask for the cancellation of the latter.

All of these facts the clerk was bound to know, and had the means of knowing from the letter of Howell and from the record of the mortgage. True, it may be said that, in a case like this, where parties conspire to accomplish such a result, the end would be the same, for, if the clerk should not heed the one, then any other of the conspirators, being mortgagor, could present the instrument. But any such possibility, does not excuse a strict compliance with the requirements of the law. And doubtless the clerk, as a cautious, prudent man, was not entirely satisfied; for he did not make the ordinary entry of cancellation as I have always understood the practice to be in this State, but prefixed to it the recital given above. I think this view is sustained by the principles laid down in *Heyder* v. *Excelsior Association, 15 Stew. Eq. 403;* and in *Woodruff* v. *Mutschler, 7 Stew. Eq. 33; Fine* v. *King, 6 Stew. Eq. 108; McPherson* v. *Rollins, 107 N. Y. 316; Swarthout* v. *Curtis, 5 N. Y. 301; Harris* v. *Cook, 1 Stew. Eq. 345; Poore* v. *Price, 27 Am. Dec. 586;* and I call especial attention to the case of *Harrison* v. *Johnson, 3 C. E. Gr. 420,* and *S. C., 4 C. E. Gr. 488,* where the well-considered observations of the chief-justice in the latter report, being on review, are well worthy of careful study.

But to proceed: The property was struck off to Isaac L. Howell at the sale under the mortgage to the insurance company. Can he claim anything under this cancellation? I am impressed with the belief that he cannot, in equity. He did not examine the record, and was in no sense influenced by it. There is nothing to show that he had ever heard of its existence. If he ever acquired any information as to these transactions, it must have been before the attempted cancellation, and from some of the persons engaged in the scheme to supplant this complainant, and in that event he would be in the position of Johnson, in the case of *Harrison* v. *New Jersey R. R. Co., supra,* who, knowing about the facts in the case, was charged with notice that the mortgage was not paid, although it was found in the hands of

the mortgagor, who tore off the seals and procured the clerk to cancel it. But I do not find that Isaac had any knowledge of these transactions. It is true, he was the son of David K. Howell, the mortgagor, and, at the time of the substitution of the Wells mortgage for the said George Baldwin, in 1872, lived on the Frelinghuysen farm, which was one of the farms included in the former mortgage, was farming it on his own account, and was then over thirty years of age. It is also true, under such circumstances, coupled with the fact that his father died in the year 1873, which death must have brought to light the true condition of his estate to Isaac, a strong presumption arises that Isaac actually knew that the Wells mortgage had been fraudulently canceled; but there is not enough in the case to satisfy my mind that I ought to advise a decree on such a presumption. I do not feel justified in holding that he had any knowledge either of the wrong committed by the substitution, or by the deception practiced on the clerk in inducing him to make the cancellation. And it is this entire absence of information that leads me to conclude that there is nothing that Isaac can set up by way of estoppel, not even this record of pretended cancellation, as a protection against the original Wells mortgage.

But Isaac L. Howell is no longer the owner. He sold to John W. Cook, who is a defendant. In his behalf it is claimed that he is in the situation of an innocent purchaser for value. If he can be regarded as occupying a superior position to his grantor, it is because he examined the records before he took his title, and there found the Wells mortgage canceled, as stated. I think it will be admitted that, in such case, the whole record must be examined and regarded; every part of it being notice of what it says. Nor is it to be overlooked that the absence of important facts from such records often demands the first attention. Both what was in this record and what was not, certainly challenged the scrutiny of every one interested. As I have already intimated, the clerk himself was not satisfied with an ordinary entry of cancellation, and so made the extra recital in the record which I have quoted above. This was a warning to all who examined it. Mr. Cook took pains to establish the fact that he examined

the record, and that he procured the aid of counsel for that purpose. Now, when it is remembered that the statute must be our guide and also the protection of all parties interested, including not only subsequent purchasers or mortgagees, but also the mortgagee who is prior, I think it will be conceded that with this unusual entry before them, showing that the mortgage had been presented for cancellation, without disclosing by whom, it became at once the plain duty of the interested inquirer to look farther for the truth concerning the authenticity of that attempted cancellation. It seems to me, that, under the provisions of our statute, the person examining that entry had sufficient notice to put him on inquiry. Had he asked the clerk who it was that presented the mortgage for cancellation, he would have learned that it was presented by a person who had no authority whatsoever. A cautious man would have made such inquiry. I think this view is sustained by reason and authority. As to the various conditions of facts which will put a prudent man on inquiry, see *Swarthout* v. *Curtis, supra; Van Doren* v. *Robinson, 1 C. E. Gr. 256 ; Smallwood* v. *Lewin, 2 McCart. 60; McPherson* v. *Rollins, 107 N. Y. 316; Converse* v. *Blumrich, 14 Mich. 109 (90 Am. Dec. 230); Hoy* v. *Bramhall, 4 C. E. Gr. 563; Tantum* v. *Green, 6 C. E. Gr. 364; Gale* v. *Morris, 3 Stew. Eq. 285, 289.*

The great amount of testimony produced in this case, on the various points to which I have adverted, and the very great attention given to them by counsel, seemed to make it my duty to give the whole case a reasonable consideration. It may be, sitting as a trial judge, that this is a very proper course, although requiring a great deal of time. Yet, I am convinced that there is a single view of the case which must effectually dispose of and settle, on a proper basis, the rights of all concerned. I refer to the rights and the title which the purchaser took under the foreclosure of the insurance company mortgage. I speak of this with diffidence, because it was not opened at the hearing. However, the principle seems to be so well settled, that I am quite sure I will be doing nearer right not to let it pass unobserved. Under and by virtue of the sale made in pursuance of the decree entered in that cause, the purchaser became in-

vested with and seized of all the rights, interests and estate which the complainant (the insurance company) had in the premises by force of its mortgage.

I believe that this has been held to be the law by every court which has been called on to consider the question. Indeed, a moment's reflection will satisfy the candid inquirer that this must inevitably be so, or else there can be no certainty in attempting to pass titles by judicial sales. I refer to *Mount* v. *Manhattan Co., 16 Stew. Eq. 25, 17 Stew. Eq. 297; Vroom* v. *Ditmas, 4 Paige 526, 531; McGee* v. *Smith, 1 C. E. Gr. 462; McMillan* v. *Richards, 9 Cal. 365 (70 Am. Dec. 655, 665); Andrews* v. *Wilkes, 6 How. (Miss.) 554 (38 Am. Dec. 450); Rogers* v. *Brent, 5 Gilm. (Ill.) 573 (50 Am. Dec. 422); Bumpus* v. *Platner, 1 Johns. Ch. 213; Wilson* v. *Small, Spen. 151; Rector of Christ Church* v. *Mack, 93 N. Y. 488; Haynes* v. *Wellington, 25 Me. 458, 461; Taylor* v. *Kearn, 68 Ill. 339, 343; Poweshiek Co.* v. *Dennison, 36 Iowa 244; Carter* v. *Walker, 2 Ohio St. 339; DeHaven* v. *Landell, 31 Pa. St. 120; West Branch Bank.* v. *Chester, 11 Pa. St. 282; Zollman* v. *Moore, 21 Gratt. (Va.) 313; Gillett* v. *Eaton, 6 Wis. 30; Tallman* v. *Ely, 6 Wis. 244.*

The mortgage given to the insurance company has not been in any manner attacked, nor has it been intimated that it was subject to impeachment by any one.

I think the bill should be dismissed, with costs.