The facts in this case are as follows:
On April 29th, 1927, complainants, Charles Riley and Charlotte Riley, his wife, purchased from Alexander Maryanski, one of the defendants, premises known as 408 Berkeley avenue, Bloomfield, New Jersey.
The premises were sold subject to a first mortgage of $8,000 held by the Bloomfield Savings Institution. Maryanski took back a purchase-money mortgage of $4,000 dated April 29th, 1927; installments of $50 a month and interest were to be paid on this mortgage, but such installments did not commence until May 1st, 1928.
On January 20th, 1928, Maryanski assigned said mortgage of $4,000, by written assignment, to the defendant Passaic-Bergen Lumber Company. The assignment was not recorded but Maryanski at once notified complainants that the mortgage *Page 17 
had been assigned to the Passaic-Bergen Lumber Company, and directed them to pay the interest to that concern thereafter. Passaic-Bergen Lumber Company maintained an office and lumber yard at East Orange near the Bloomfield line. To this office Mrs. Riley was referred by Maryanski. Although it now appears that the Passaic-Bergen Lumber Company has several offices and yards, complainants did not know this and there was nothing on the sign or the office door at East Orange to negative the idea that it was not the head office or the only office of that company. On May 1st, 1928, or at any rate, just prior to the first installment of $50 and interest falling due, Mrs. Riley called up the office of the Passaic-Bergen Lumber Company, and talked to Miss Klumpf, who said she was the head bookkeeper and assistant manager. She told Miss Klumpf about the mortgage and asked where she should send the money. She was told that Mr. John R. Schick, the general manager, would come around and see her. Immediately thereafter, Mr. Schick came and she paid him the first month's installment of principal and interest, the check being made out to Passaic-Bergen Lumber Company.
About a month later, and on or about June 2d 1928, Mr. Schick called again and told complainants that by reason of some business adjustment with the company, the Passaic-Bergen Lumber Company had turned over this bond and mortgage to him, and that the payments thereafter were to be made to him. He thereupon exhibited to Mrs. Riley the original bond, mortgage and the assignment to the Passaic-Bergen Lumber Company (Schick says he also showed her an assignment from the Passaic-Bergen Lumber Company to himself). Schick thereupon returned to Mrs. Riley the check for $170 that she had previously made out to the Passaic-Bergen Lumber Company, and destroyed the same in her presence. She then made out a new check for $170 plus $50 (the installment then due) and thereafter paid John R. Schick the monthly installments and interest as it fell due. These checks so paid amount to $1,314.25. Early in December, 1929, Mrs. Riley received a message from the Passaic-Bergen *Page 18 
Lumber Company and was asked to bring down to the office all her check vouchers on this Maryanski mortgage. Miss Klumpf, the assistant manager, told her that Schick was on a vacation; that somehow the mortgage had been mislaid, and that it would be necessary to draw a new mortgage, and that was why they wanted the vouchers to calculate the balance then due. As Mrs. Riley testifies:
"Miss Klumpf had some papers on her desk and she had a list there, or some papers with some numbers on and had `Riley-Maryanski' marked on it, so she then made a list of my checks that I had paid, and I said at the time, `Is there anything wrong? What seems to be the matter?' She said that Mr. Schick was away and that they could not put their hands on the mortgage, that a new one would have to be drawn up. She said: `There is absolutely nothing wrong; you don't have to worry yourself about it.'"
Later on a new manager called on complainants and said that the Passaic-Bergen Lumber Company did not own the mortgage.
During the four or five years of his incumbency Schick was apparently well known in this section as the manager of the Passaic-Bergen Lumber Company. His name alone appeared on the cards as manager. His name alone appeared on the office door. Over a long period of time and with the knowledge of the company he signed postponements of lien in the company's name by him as manager. With the full knowledge of the company he adjusted disputed accounts, took such security by way of mortgage as he thought best, as appears by the abstract of a score or more of mortgages introduced into evidence, attended creditors' meetings and made decisions for the Passaic-Bergen Lumber Company.
Furthermore, it appears that several parcels of land belonging to the Passaic-Bergen Lumber Company were carried in Schick's name. Several other parcels of land belonging to the Passaic-Bergen Lumber Company were carried in the name of various corporations incorporated by the general counsel of the Passaic-Bergen Lumber Company, and in which Schick appears as the moving spirit. By arrangement *Page 19 
with the company he, Schick, collected certain moneys individually; with the knowledge and under the direction of the Passaic-Bergen Lumber Company he placed the money so collected in a certain bank in his own name. These collections actually belonged to the Passaic-Bergen Lumber Company but were kept in an account in his name, but distinct from his own funds. Out of this he paid certain debts and carrying charges on these properties that he held for the benefit of the Passaic-Bergen Lumber Company. Schick also kept a private book of account showing these receipts and just how he disbursed them. The reason for doing it this way was that the same would not show on the regular books of the Passaic-Bergen Lumber Company in case they should be examined by the auditors of some of the banks. These check books, check vouchers and the books of account Schick kept at the office. When he left, these books were taken by Mr. Petterson, the president of the Passaic-Bergen Lumber Company, and he admittedly still has them. He was served with a notice to produce them. This he did not do and gave no reason for his failure. This indicates to me that the books confirm Schick's testimony. Moreover, Schick says that the lumber company authorized him to collect the Riley money in his own name and that the company received the benefit of it. This neither the president of the company nor Miss Klumpf, assistant manager, denied, although both testified in the case.
Again the president admits that the company carried properties in the name of other individuals. For example, he denied knowledge of the formation of the Columbia Company by his own counsel but after he learned about it, ratified the action by taking it over. There were other "convenience corporations" founded he says without his knowledge but afterwards accepted by him. He knew of mortgages taken for debt.
Under these circumstances, the first question to be decided is, was Schick clothed with real or apparent authority by the Passaic-Bergen Lumber Company to accept this mortgage in payment of indebtedness, and did he bind the company? *Page 20 
I think he did. Schick had been so held out to the public as having authority that the company is now estopped from denying it. The case of J. Wiss Sons Co. v. H.G. Vogel Co.,86 N.J. Law 618, holds as follows:
"As between the principal and third persons the true limit of the agent's power to bind the principal is the apparent authority with which the agent is invested. The principal is bound by the acts of the agent within the apparent authority which he knowingly permits the agent to assume, or which he holds the agent out to the public as possessing.
"The question, in every case depending on apparent authority of the agent, is whether the principal has, by his voluntary act, placed the agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question, and when the party relying upon such apparent authority presents evidence which would justify a finding in his favor, he is entitled to have the question submitted to the jury.
"The evidence tended to show that the defendant company was selling a special product at a varying price, not a staple produce at a fixed price; that it knew it was meeting keen competition, and that its proposal must be modified in order to get the contract; that the very nature of the contract and of the negotiations required an agent familiar with its business and able to figure on the work; that it sent an agent to the plaintiff to discuss and negotiate the contract, introducing him as its `contracting agent,' and who was known to the plaintiff as the agent who commonly made such contracts for the defendant. Held, that it was open to the jury to find that such agent was invested with the apparent authority to modify the proposal and lower the bid so as to get the contract, and it was erroneous to withdraw that question from the jury."
I will, therefore, advise a decree that the mortgage in question is the property of Passaic-Bergen Lumber Company *Page 21 
and that Mrs. Riley should be entitled to credit for all the money she paid to Schick because he held himself out and was held out by the company as their agent for such purposes.
There is another principle here involved which is that when one through negligence gives another power to practice fraud upon innocent parties the court will not interfere to protect him.Parkview Building and Loan Association of Newark v. Rose,90 N.J. Law 614; Heyder v. Excelsior Building Loan Association,42 N.J. Eq. 403; Baldwin v. Howell, 45 N.J. Eq. 519.
It seems quite apparent to me that the company authorized Schick to proceed, without consultation, to settle accounts and to accept mortgages in lieu of cash and to carry real estate of the company in his own name, to found various corporations, and to take real estate from debtors who could not pay cash, and assuming that he did not turn over the moneys which Mrs. Riley paid him, as his uncontradicted testimony shows he did, the company should suffer and not Mrs. Riley, because the company placed him in a position to perpetrate this fraud if it was a fraud.